## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

APPLIED CAPITAL, INC.

       Plaintiff,

v.                               No. 1:16-cv-00815-WJ-SCY

THE ADT CORPORATION,
ADT, LLC, and
ICONTROL NETWORKS, INC.,

       Defendants.

### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT ICONTROL'S MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION
### and
### GRANTING PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY
### and
### REFERRING MATTER TO MAGISTRATE JUDGE FOR DISCOVERY

THIS MATTER comes before the Court upon a Motion to Dismiss for Lack of Personal Jurisdiction, filed on September 12, 2016 by Defendant IControl Networks, Inc. **(Doc. 15)**.  In this patent infringement case, Plaintiff Applied Capital, Inc. ("Applied Capital") alleges that Defendants infringed United States Patent No. 8,378,817 ("the '817 patent). Defendants are the ADT Corporation and ADT, LLC (collectively, "ADT") and IControl Networks, Inc. ("IControl").   Having reviewed the relevant pleadings of the parties and the applicable law, the Court finds that IControl's motion is denied at this time, and that a final ruling on personal jurisdiction will be made following limited jurisdictional discovery.

### BACKGROUND

The '817 patent is a home monitoring system.  Plaintiff alleges that ADT is infringing on the patent by making, using or selling the ADT Pulse; and that IControl "powers" and provides

servers and software for the ADT Pulse and for IControl One home monitoring service, which are the allegedly Infringing Products.  Compl., ¶13, 15, 16.  Applied Capital is a New Mexico corporation with its principal place of business in Albuquerque, New Mexico; both Defendants ADT and IControl are Delaware corporations. The complaint alleges one claim for Infringement of the '817 Patent, and asserts federal jurisdiction under 35 U.S.C. § 271 et seq., (infringement of patent), 28 U.S.C. §§ 1331 and 1338(a) (trademark and unfair competition).

In this motion, IControl contends that this Court lacks personal jurisdiction over IControl because the complaint fails to allege sufficient facts from which the Court may plausibly infer that personal jurisdiction over IControl exists in New Mexico.  In its argument, IControl relies heavily on the filed Declaration of Paul Dawes, IControl's Executive Vice President.  Ex. 2 (Doc. 15-2, "Dawes Declaration").

## DISCUSSION

### I.    Legal Standard

Personal jurisdiction in patent cases is governed by the law of the Federal Circuit. *Grober v. Mako Prods.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012). "Personal jurisdiction over foreign defendants in federal court typically depends on the existence of sufficient contacts between the defendant and the forum state, requiring the plaintiff to establish that the exercise of personal jurisdiction [would be proper] in the courts of the forum state." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293 (Fed.Cir.2012) (citations omitted). The Court may exercise personal jurisdiction over a defendant if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 788 (Fed.Cir.2011) (citations omitted).

Personal jurisdiction for an out-of-state defendant is "a two-step inquiry: 'whether a

forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process.'" *Grober*, 686 F.3d at 1345 (citing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1017 (Fed.Cir.2009)). The New Mexico long-arm statute is coextensive with constitutional limitations imposed by the Due Process Clause and so "the usual two step analysis collapses into a single search for the outer limits of what due process permits." *F.D.I.C. v. Hiatt*, 117 N.M. 461, 463-64 (1994). *See Tercero v. Roman Catholic Diocese*, 132 N.M. 312, 318 (2002) ("transaction of any business" element of the long arm provision is sufficient to fulfill the due process standard of minimum contacts if the cause of action arises from the particular transaction of business, and the minimum contacts were purposefully initiated by the defendant"); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006); *Tarango v. Pastrana*, 616 P.2d 440, 441 (N.M. Ct. App. 1980) (three-step inquiry of long-arm statute collapses into two-step inquiry, which is whether a defendant has established minimum contacts with New Mexico and whether the cause of action arises from those contacts).[1]

The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process is "whether the defendant purposefully established minimum contacts in the forum state." *Nuance Commc'ns, Inc., v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed.Cir.2010) (internal citations omitted) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) and *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, a defendant must purposefully avail itself of the benefits and

---

[1]  The Federal Circuit has noted that sometimes the inquiries under a state's long-arm statute and the due process clause coalesce into one "because the reach of the state long-arm statute is the same as the limits of the due process clause, so that the state limitation 'collapses into' the due process requirement." *See Trintec Industries, Inc. v. Pedre Promotional Products, Inc*., 395 F.3d 1275, 1279 (Fed.Cir. 2005).

protections of the forum state such that the defendant should reasonably anticipate out-of-state litigation. *Burger King Corp.*, 471 U.S. at 474.

A plaintiff satisfies the "minimum contacts" standard by showing that the court may exercise either general or specific jurisdiction over the defendant. *McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F.Supp.3d 1188, 1199 (D.N.M.,2013) (citing *Helicopertos Nacionales de Colombia,S.A. v. Hall,* 466 U.S. 408, 414 (1984). General jurisdiction arises when a defendant maintains contacts with the forum state that are sufficiently "continuous and systematic," even when the cause of action has no relation to those contacts." *Grober*, 686 F.3d at 1345 (citing *Helicopteros*, 466 U.S. at 414–16). Specific jurisdiction "arises out of or relates to the cause of action even if those contacts are isolated and sporadic." *AFTG–TG, LLC v. Nuvoton Tech. Corp*., 689 F.3d 1358, 1360 (Fed.Cir.2012) (internal quotation and citation omitted). The plaintiff has the burden of making a prima facie showing of jurisdiction. Under the prima facie burden, the district court must resolve all factual disputes in the plaintiff's favor in evaluating the jurisdictional question. *Celgard, LLC v. SK Innovation Co., Ltd*., 792 F.3d 1373, 1378 (Fed.Cir. 2015). IControl contends that Applied Capital has failed to show a basis for either general or specific jurisdiction.

## II.    Nature of Allegations

Allegations regarding jurisdiction must be individualized according to defendant. *Calder v. Jones,* 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). Also, to sufficiently plead that an entity has minimum contacts with a forum state, a complaint must allege specific facts showing "sufficient activities" in the forum state. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1338 (Fed. Cir. 2008) (finding

plaintiff's complaint "fatally deficient" because the complaint merely alleged that the defendant engaged in "unspecified sales and marketing activity" through agents or affiliates).

IControl argues that Applied Capital makes conclusory and generalized allegations regarding jurisdiction which are insufficient to establish jurisdiction over IControl, pointing specifically to ¶¶ 5 and 6 in the complaint which refers to "Defendants" collectively and makes boilerplate allegations about jurisdiction without supplying necessary facts to render such allegations plausible.  *See, e.g., Avocent Huntsville Corp. v. Aten Int'l Co*., 552 F.3d 1324, 1338 (Fed. Cir. 2008) (finding plaintiff's complaint "fatally deficient" because the complaint merely alleged that the defendant engaged in "unspecified sales and marketing activity" through agents or affiliates).  IControl also contends that Applied Capital offers no individual facts regarding IControl's contacts with New Mexico and fails to identify a single IControl business transaction in New Mexico.

While the Court agrees with IControl that Applied Capital could have been more specific about the facts pertaining to each Defendant, there is sufficient factual description of the allegedly infringing conduct as to IControl.  *See, e.g.,* Compl., ¶13 ("ADT pulse is powered by IControl");  ¶¶18, 19 (describing allegations of infringement with regard to IControl and ADT, respectively).   There is also a reason why Applied Capital refers to Defendants collectively, and that is because Defendants ADT and IControl are alleged to infringe on the '817 patent "either alone or as the "mastermind" directing or controlling the actions and/or participation of each other defendant and/or any third parties."  Compl., ¶20.  Thus, to the extent the complaint is somewhat lacking in specificity, it is not enough to grant IControl's motion on that basis.

## III.    General Jurisdiction

For general jurisdiction to exist, a defendant must have contacts with the forum State that are "so continuous and systematic as to render the [foreign corporation] essentially at home in the forum state." *Goodyear Dunlop Tires Ops. V. Brown*, 131 S. Ct. 2846, 2853-54 (2011).

Relying on the Dawes Declaration, IControl asserts that it clearly lacks the level of systematic and continuous contacts with New Mexico required for general jurisdiction, and that Applied Capital has failed to sufficiently allege IControl's contacts which amount to a "physical presence within the state." *Autogenomics Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1017 (Fed.Cir. 2009). IControl's principal place of business is in Redwood Shores, California. According to the Dawes Declaration, IControl is not incorporated in New Mexico and has no place of business here. It is not authorized to do business in New Mexico and has no address or phone number, employees or agents in this state. Dawes Decl. at ¶¶ 1-5. IControl does not manufacture or sell any products in New Mexico, have distributors in New Mexico, nor does it direct advertising and marketing to New Mexico. *Id.* at ¶ 12-13. IControl pays no taxes to the State of New Mexico (or any governing body within the State of New Mexico) and IControl's employees do not travel to or contact any person in the State of New Mexico to engage in the company's business. *Id.* at ¶15-16. IControl argues that these statements show that IControl itself has no contacts with New Mexico and does no business here. As a result, IControl asserts that it has no contacts with New Mexico that approximate a "physical presence within the state." *Autogenomics Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1017 (Fed.Cir. 2009) (sporadic and insubstantial contacts with forum state not sufficient to establish general jurisdiction over defendants).

In its response, Applied Capital submits argument and some evidence that IControl does provide goods and services throughout the United States including New Mexico, as well as

interactive security and remote monitoring services and that New Mexico residents have access to these goods and services through IControl's interactive website.  Applied Capital lists goods such as IControl's "Piper" security cameras as well as other accessory devices (door/window sensors, LED bulbs, range extenders, dimmers and switches).  *See* Ex. A, store-getpiper.com web page.  Internet shoppers can also buy products directly from IControl by entering their personal information in checkout page, which allows shoppers to automatically fill in certain fields by entering "N.M." in the "State" field. Ex. B.  The checkout page has a "terms of service" link that identifies getpiper.com as one of IControl's websites.  Ex. B (Piper Checkout page).  Piper cameras are also available for purchase through other online distributions including Amazon. Ex. C.  IControl also offers phone apps for Piper Mobile, IControl One and IControl Networks. Exs. E-H.  The "getpiper.com" privacy policy indicates that IControl uses its Piper mobile app and Piper service to collect shoppers' information such as name, encrypted password, IP address, geographic location, shipping address and age range.  Ex. J.

Applied Capital also claims that IControl offers services via phone apps like Piper Mobile, IControl One and IControl Networks, as well as IControl's own branded services and rebranded services offered through various dealers.  IControl also offers services through dealers such as Monitronics International, Inc. ("Monitronics"), which serves at least 28 cities in New Mexico.  Ex. L (list of New Mexico authorized dealers).  Ex. K.  IControl-owned software operates the ADT web portal and thus serves New Mexicans indirectly, if not directly because when ADT customers access ADT's web portal, they are actually communicating with server side software owned by IControl.  Applied Capital contends that this evidence shows that IControl is providing interactive security and remote monitoring services directly into New

Mexico and the ongoing and systemic nature of these contacts by IControl is sufficient to confer general jurisdiction.

IControl relies largely on the Dawes' Declarations in maintaining that IControl lacks minimum contacts for New Mexico based on its purported goods and services offered through its website.  The Dawes' Supplemental Declaration states that there are only 190 users of Piper in New Mexico.  Doc. 23-1 at ¶3.  IControl argues that Applied Capital's reliance on IControl's business activities related to either IControl One or Monitronics is futile because IControl One has never been commercially deployed, so no New Mexico resident has ever purchased or used this product, and because IControl's dealings with Monitronics (which has never actually distributed any IControl products) never matured into an actual relationship.  Doc. 23-1, ¶¶4-5.  IControl also argues that Piper products are not relevant to this patent-infringement case because even if IControl offers this product, it is a product that is totally distinct from the product in the case which is accused of infringement—IControl One.  This last argument of IControl is misplaced in a general jurisdiction analysis, because a plaintiff need not show that the cause of action is related to those contacts.  *See Grober v. Mako Prods.*, 686 F.3d 1335 at 1345 ("General jurisdiction arises when a defendant maintains contacts with the forum state that are sufficiently "continuous and systematic," even when the cause of action has no relation to those contacts"); *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) (specific jurisdiction in defamation action considers only the contact out of which cause of action arises, that is, the maintenance of the internet bulletin board; for general jurisdiction, court can "sweep much broader" to consider the sales side of the website).

Applied Capital cites to *Gorman v. Ameritrade Holding Corp*., which provides some guidance to the Court.  293 F.3d 506 (D.C. Cir. 2002) ("*Ameritrade"*).  That case asked whether

personal jurisdiction existed over a securities broker who operated a website to conduct electronic transactions with customers who did business with his firm. As part of its analysis, the court pointed out the difference between "essentially passive" websites through which customers merely access information about the financial markets versus websites such as in the *Ameritrade* case where residents of the District of Columbia as the forum state engaged in electronic transactions with the firm. 293 F.3d at 513. The court noted that the fact that the broker's business was conducted in "cyberspace" through electronic transactions at an Internet website, as opposed to being conducted through physical presence, would not preclude District of Columbia court from having personal jurisdiction over him. The court concluded that based on the available record, it was "quite possible" that Ameritrade, through its broker's website transactions, was doing business in the District of Columbia by continuously and systematically "enter[ing] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Id.* However, the court found that determining whether Ameritrade was actually "doing business" in the District required "an examination of the frequency and volume of the firm's transactions with District residents" through additional discovery limited to those issues. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 883-84 (Fed. Cir. 2008) (quoting *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.,* 395 F.3d 1275 (Fed. Cir. 2005) (ability of forum residents to access defendants' websites "does not by itself s how any persistent course of conduct by the defendants in the forum"); *Shrader v. Bidding,* 633 F.3d 1235, 1243 (10th Cir. 2011) (case law sets general jurisdiction bar "quite high" and evidence of "substantial sales" is required).[2]

---

[2] *Shrader* compares cases which find sales insufficient for a finding of general jurisdiction with others finding that general jurisdiction is present based on transactions made "on a sustained basis":

This case concerns the issue of personal jurisdiction over a component manufacturer and like *Ameritrade,* involves a possible jurisdictional basis because of an interactive website and because of goods and services provided in other ways, either through IControl-owned software that operates home-monitoring systems or the company's own branded services offered through dealers.  Applied Capital has also provided evidence that Defendant maintains a website that invites customers to shop, not just to browse.  IControls' customers—whether direct or indirect—have software owned by IControl installed on customers' electronic devices because IControl does not sell its software but instead provides licenses.  This means that IControl still owns the software that operates the Comcast and ADT applications used by the customer.

Applied Capital generally does not dispute the statements made in the Dawes' Declarations, but at the same time notes that the Declaration does not contest certain allegations in the complaint asserting jurisdiction over IControl, such as ¶¶14-17 describing IControl's provision of servers and software for Comcast and the ADT Pulse web portal.  IControl represents that IControl One has never been commercially deployed and that its relationship with Monitronics "never matured" into a dealer-dealership relationship, but then there is the pesky

---

*Compare Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed.Cir.2008) (holding twelve internet sales for $14,000 over eight years insufficient for general jurisdiction); *Revell v. Lidov,* 317 F.3d 467, 471 (5th Cir. 2002 (holding sales of thirty-five subscriptions in two years insufficient for general jurisdiction); *Bird v. Parsons,* 289 F.3d 865, 874 (holding 4,666 internet domain-name registrations, specifically analogized to sales, insufficient for general jurisdiction); *ESAB Group, Inc. v. Centricut, Inc*., 126 F.3d 617, 623–24 (4th Cir.1997) (holding twenty-six mail order customers in forum state insufficient for general jurisdiction) with *Gator.Com Corp. v. L.L. Bean, Inc*., 341 F.3d 1072, 1080 (9th Cir.2003) (finding general jurisdiction based in part on "millions of dollars in sales, driven by an extensive, ongoing, and sophisticated sales effort involving large numbers of direct email solicitations and millions of catalog sales"), *vacated as moot on reh'g en banc on basis of settlement*, 398 F.3d 1125 (9th Cir.2005). In sum, the best general formulation for this niche of the law may have been provided by the district court in Oklahoma: "A web site will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." *Smith v. Basin Park Hotel, Inc*., 178 F.Supp.2d 1225, 1235 (N.D.Okla.2001) (emphasis added).

*Shrader*, 633 F.3d at 1243.

issues of IControl servers and software which allegedly operate the ADT Pulse and IControl home monitoring services; phone apps for IControl One and IControl Networks; and an interactive website that appears to offer IControl products.  This evidence at least invites an inquiry into the nature and extent of website activity that reaches into New Mexico and into the status of the apps which have not been "deployed."

It is worth mentioning another case, *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* which offers a good example of how the more traditional notions of sale and marketing gives way to a standard more applicable to patent-infringement cases.  21 F.3d 1558 (Fed.Cir. 1994). The *Beverly Hills Fan* case involved an alleged patent infringement of a ceiling fan.  The court applied the Federal Circuit's "stream of commerce" analysis, noting that it was not bound to the specific limiting provisions in Virginia's long-arm statute because the case was "intimately related to substantive patent law."  21 F.3d at 1564.   The alleged foreign infringer's sole contact with the forum resulted from indirect shipments of fans through the stream of commerce.  While Virginia's long-arm statute would most likely have precluded the exercise of jurisdiction, the court found that when considering a "stream of commerce" theory, the court found that plaintiff had made the required jurisdictional showing under either version of that theory ("foreseeability" or "additional conduct" with purposeful direction):

> When viewed in the light of the allegations and the uncontroverted assertions in the affidavits, plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there.

*Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F.3d 1558, 1566 (Fed.Cir. 1994).

In the instant case, even though IControl has no clear-cut business ties to New Mexico, under a "stream of commerce" theory, with additional factual inquiry Applied Capital may be

able to show sufficient contacts to satisfy due process under both versions.  IControl operates a website from which it is difficult to determine without further discovery, exactly how New Mexican residents are affected.  *Cmp. Ameritrade,* 293 F.3d at 516 ("Ameritrade is quite wrong in treating 'cyberspace' as if it were a kingdom floating in the mysterious ether, immune from the jurisdiction of earthly courts.").  The Court finds that the inquiry should continue on to an examination of whether IControl has contacts with New Mexico that are sufficiently continuous and systematic as to render IControl "essentially at home in the forum state" for purposes of general jurisdiction. *Goodyear Dunlop Tires Ops. V. Brown*, 131 S. Ct. at 2853-54 (2011).

In its reply, IControl argues that Applied Capital cannot base general jurisdiction on the alleged sales and distribution of Piper and IControl software through third parties, which the Court assumes means Monitronics, and also rebuffs the suggestion that Monitronics is involved with any kind of "partnership" with IControl.  Third-party distributor activities cannot be used as evidence to establish general jurisdiction, although it may "bolster the exercise of specific jurisdiction."  *Goodyear DunlopTires Operations,S.A .v. Brown*, 563 U.S. 915, 927-929 (2011). Exactly how Monitronics fits into the jurisdictional analysis is unclear without further discovery, and so the Court makes no finding on Monitronics' role in assessing general jurisdiction over IControl.

Construing the pleadings and exhibits favorably to Applied Capital, the Court finds that Applied Capital has made a prima facie showing of general jurisdiction sufficient at least to defeat the motion to dismiss and allow jurisdictional discovery.  *See Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1282–83 (Fed.Cir. 2005) (construing pleadings and affidavits in light most favorable to plaintiff and remanding to district court for

jurisdictional discovery where plaintiff made prima facie showing required to defeat motion to dismiss).

## IV.     Specific Jurisdiction

IControl contends that Applied Capital cannot show more than random, fortuitous or attenuated contacts on the part of IControl into New Mexico, which is insufficient to satisfy specific jurisdiction requirements under either of the theories used to determine whether specific jurisdiction exists.  *See Nuance Commc'ns, Inc.,* 626 F.3d at 1231.

Under the test used by the Federal Circuit in patent-infringement cases, a plaintiff must show that (1) defendant purposefully directed activities to the forum's residents and (2) that the claim arises out of or relates to those activities. *Nuance Commc'ns, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1231 (Fed.Cir.2010), cited in *Silicon Laboratories, Inc. v. Cresta Technology Corp*., 2014 WL 3530817, at *2 (W.D.Tex.,2014).  Once a plaintiff has met these two factors, the defendant has the burden of proving that the exercise of jurisdiction would be unreasonable and unfair. *Celgard, LLC v. SK Innovation Co., Ltd*., 792 F.3d 1373, 1377 (Fed.Cir. 2015).

The Federal Circuit also uses a "stream of commerce" analysis, which was first described in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980), and reaffirmed in *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102 (1987).  In *World-Wide Volkswagen,* the Supreme Court stated that a defendant could purposefully avail itself of a forum by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate."  444 U.S. at 298.  In *Asahi,* Justice O'Connor, writing separately and joined by three justices in a plurality of four justices, concluded that something more than mere foreseeability was required—an action of the defendant "purposefully directed toward the

forum state." *Id.* at 112, cited in *Nuance* Communications, 626 F.3d at 1233. The cited examples of purposeful direction included "marketing through a distributor . . . in the forum [s]tate" and "providing regular advice to customers." *Id.* Justice O'Connor contended that something more than the foreseeability of entry of the defendant's products into the forum state was required because that low threshold does not guarantee that due process' purposeful-availment requirement is met. *Celgard, LLC.,* 792 F.3d at 1381(citing *Asahi,* 480 U.S. at 112). However, Justice Brennan, joined by three other justices, opined that mere foreseeability that the defendant's product would wind up in the forum state was sufficient to establish jurisdiction and that the showing of additional conduct was unnecessary. *Celgard, LLC,* 792 F.3d at 1382 (citing *Asahi* at 117).

The consensus in the Federal Circuit seems to be that the "stream of commerce theory" provides a valid basis for finding requisite minimum contacts in a patent-infringement case, but there is confusion is over the theory's exact requirements because the "regional circuits have not reached a uniform approach to this jurisdictional issue." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed.Cir. 1994) (stream of commerce theory "has achieved fairly wide acceptance in the federal courts [but] even when followed, the theory comes in several variants).[3] In the wake of the *Asahi* plurality, the precise requirements of the "stream of commerce" theory of jurisdiction are still unsettled; that is, whether mere placement into the stream of commerce is sufficient to establish jurisdiction, or whether additional conduct is needed, such as an intent that the products reach the forum. *See Asahi,* 480 U.S. at 117, *cited in Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d at 1381. The Supreme Court recently

---

[3] *See also Silicon Lab.*, 2014 WL 3530817 at *2 (unclear if "stream of commerce" theory is "[i]n addition to [the] specific jurisdiction test, or perhaps merely modifying it"); *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1382 (Fed.Cir. 2015) ("precise requirements of the stream-of-commerce theory of jurisdiction remain unsettled); *AFTG–TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364–65 (Fed.Cir.2012) (discussing cases).

reconsidered the requirements for establishing jurisdiction under a stream-of-commerce theory in *McIntyre Machinery, Ltd. v. Nicastro,* ⸻ U.S. ⸻, 131 S.Ct. 2780 (2011) but again did not reach consensus on whether something more than foreseeability is required. Writing for a plurality of the Court, Justice Kennedy held that jurisdiction over the defendant was improper under a stream-of-commerce theory because the defendant had not purposefully availed himself of the forum state's laws. *See Celgard,* 792 F.3d at 1382.

Thus far, the Federal Circuit has taken the approach of using *both* theories in order to determine whether a plaintiff is able to establish minimum contacts. *Silicon Laboratories, Inc. v. Cresta Technology Corp.,* 2014 WL 3530817, at *2 (W.D.Tex.,2014); (". . . the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary") (citing *AFTG-TG, LLC v. Nuvoton Tech. Corp.,* 689 F.3d 1358, 1364 (Fed.Cir. 2012)); *see Celgard,* 792 F.3d at 1381 (acknowledging the flexibility of the "foreseeability" standard but conducting analysis under both versions and finding results were same under both tests); *Beverly Hill Fan,* 21F.3d at 1566 (plaintiff made required jurisdictional showing under both versions of the "stream of commerce" theory). *See Silicon Lab.,* 2014 WL 3530817, at *2 (noting that district courts could be left "without guidance" if only one of the "stream of commerce" tests is met). For purposes of this discussion, the Court will examine whether Applied Capital has made a prima facie case for specific jurisdiction over IControl under both versions of the "stream of commerce" standard. Analysis of the issue under both versions will ensure that the Federal Circuit's existing jurisdictional standard is considered. *See Celgard,* 792 F.3d at 1381 (more than "foreseeability" of entry of the defendant's products in the forum state

15

was required because that low threshold "does not guarantee that due process' purposeful-availment requirement is met") (citing *Asahi*, 480 U.S. at 112).

A.   Purposeful Direction

IControl argues that the complaint fails to allege even a single fact supporting purposeful direction because there is no allegation that IControl has marketed or sold IControl One in New Mexico or that any New Mexico resident obtained IControl One and used it in New Mexico. Applied Capital contends that IControl has directed activities at New Mexico residents through its interactive web page and through the goods and services it offers based on the IControl One home monitoring service. Exs. M, N, & O. Applied Capital also claims that the "arising out of" prong of the purposeful-direction theory is satisfied because Applied Capital's claims of infringement arise from IControl One as the infringing product.

Applied Capital has met a prima facie case under a purposeful direction theory on both factors. While IControl's website alone may not suffice to satisfy specific jurisdiction, together with the other goods and services offered through iphone apps and software to operate home monitoring systems, IControl's activities may be sufficient to meet the requirements for jurisdiction, although a final determination cannot be made until after additional discovery.

B.   Stream of Commerce Theory

IControl argues that Applied Capital's allegations lack sufficient facts to confer stream of commerce jurisdiction over IControl because Applied Capital does not identify what IControl's business is, or what portion is alleged to occur in New Mexico. IControl points out that the complaint fails to allege the infringing feature of Pulse as it is related to IControl's software platform. *See AFTG*, 689 F.3d at 1361 (specific jurisdiction requires allegation that the claim arises out of or relates to defendants' activities in the forum state).

As previously noted, the Court does not view the complaint as the "bare forumulaic accusation" described by IControl.   For example, Applied Capital alleges that IControl One provides servers and/or server side software for other home monitoring service providers such as Comcast and ADT.  Compl., ¶¶6, 14-16.  Applied Capital also alleges that the IControl One web portal provides substantially every feature that is provided by the ADT web portal, which is in turn described as an infringing product.  Compl., ¶¶18-19.  Both Defendants are alleged to "practice all the steps of one or more of the claims of the '817 patent either alone or as the "mastermind" directing or controlling the actions and/or participation of each other defendant . . . ."  Compl., ¶20.

Applied Capital does not address the stream of commerce theory separately, but Applied Capital's argument for the existence of specific jurisdiction seems to be that IControl places its software into the "stream of commerce" by selling its software to ADT, which in turn allegedly incorporates the software as a component into Pulse, and then allegedly sells Pulse in New Mexico.  The Court finds that Applied Capital has met a prima facie description, although at a bare minimum, for a possible basis for a "stream of commerce" theory of jurisdiction.  As explained by the Federal Circuit, a required element of the foreseeability standard is that the accused infringer knew its product was being sold or marketed in the forum state.  *See Celgard*, 792 F.3d at 1382.   There is room for some doubt here, as Applied Capital does not contest the Dawes' Declarations which state that IControl has no control over where and how ADT markets, advertises, or sells Pulse (which IControl is alleged to power and support); and that IControl does not know whether any particular Pulse system in fact uses IControl's software platform as a component.  Dawes Decl., Doc. 15-2, ¶¶19-21.  However, the purpose of further discovery is to resolve these uncertainties.   It is possible that IControl's website offering its products for

customers nationwide resulted in a substantial sales market in New Mexico, especially when considered along with other information regarding use of IControl-based iphone apps and IControl's server and software support for home monitoring systems in this state.  The ultimate question will be whether this lawsuit in New Mexico should come as a surprise to IControl as a participant in the process of furnishing goods and services into this state.  *See Asahi,* 480 U.S. at 117 ("As long as a participant in [the process involving the regular and anticipated flow of products from manufacture to distribution to retail sale] is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.").

   C.   Reasonable and Fair

   Even where a party has been shown to have minimum contacts with the forum state, these contacts "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice,' " i.e., whether exercising jurisdiction would be reasonable. *See Burger King Corp.,* 471 U.S. at 476. Requirements inherent in the concept of "'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if [a] defendant has purposefully engaged in forum activities." *Id.* at 477-78.  Factors relevant to this inquiry may include:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Patent Rights Protection Group, LLC v. Video Gaming Technologies, Inc*., 603 F.3d 1364, 1369 (Fed.Cir. 2010) (citing *Burger King Corp.,* 471 U.S. at 476-77).

   IControl contends that for this Court to find that there is personal jurisdiction over IControl would be unreasonable because it is based in California and has no offices, employees,

documents, facilities or other business in New Mexico; New Mexico does not have a particular interest or connection with this dispute or with substantive patent policy, and thus there is no judicial efficiency basis for this case proceeding here. Applied Capital on the other hand argues that there is little burden on IControl litigating here because of its existing contacts with New Mexico and because "modern transportation and communications have made it much less burdensome for a party sued to defend [itself]." *Patent Rights,* 603 F.3d at 1370. Applied Capital also disagrees with IControl's assessment of New Mexico's interest in this matter because Applied Capital is a New Mexico corporation and New Mexico would have no lesser interest than any other state in advancing substantive patent policy. The Court agrees that New Mexico has a stake in this litigation if for no other reason than the fact that Applied Capital is a New Mexico company and New Mexico residents may be affected for that reason, although the number of actual contacts with New Mexico is undecided at this point. The Court would tend to conclude that if minimum contacts are shown to exist at the end of discovery, it would be fair and reasonable to expect IControl to defend its case here.

## V.     Jurisdictional Discovery

Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling–Temco–Vought, Inc*., 511 F.2d 1033, 1035 (10th Cir.1975). However, whether to grant jurisdictional discovery is a matter of discretion for the district court. *Id*. The party seeking jurisdictional discovery bears the burden of demonstrating (1) a legal entitlement to it and (2) how the party would be harmed by a denial of jurisdictional discovery. *Grynberg v. Ivanhoe Energy, Inc*., 490 F. App'x 86, 103 (10th Cir.2012). The Federal Circuit also notes that where the existing record does not support personal jurisdiction, the plaintiff is entitled to jurisdictional discovery. "Such

discovery is appropriate where the existing record is 'inadequate' to support personal jurisdiction and 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1283 (Fed. Cir.2005) (citing *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C.Cir.2000)); *see also Silicon Lab.,* 2014 WL 3530817, at *2 (jurisdictional discovery is used to give plaintiff an opportunity to obtain evidence of the "additional conduct" for "stream of commerce" theory).

The Court disagrees with IControl that jurisdictional discovery would be futile. As discussed above, it is possible, based on the record now before the Court, that IControl is doing business with residents of New Mexico through its website and the goods and services offered through its software provisions and iphone apps.   There are insufficient facts from which the Court can determine the frequency and volume of this business, and consequently whether either general or specific jurisdiction exists.   However, Applied Capital has presented sufficient facts and evidence which persuade the Court that further discovery on the jurisdictional issues is warranted.   *Ameritrade,* 293 F.3d at 513 (jurisdictional discovery was justified and should have been afforded where plaintiff demonstrated that it can supplement its jurisdictional allegations through discovery).[4]

---

[4]   Applied Capital does not specify how it would be harmed if jurisdictional discovery were denied, and the Court is reluctant to deny discovery on that basis alone.   However, in the final determination of whether IControl is subject to this Court's personal jurisdiction, the Court gives notice to Applied Capital's counsel to pay particular attention to such details as legal standards and attend to them more completely.

   Also, at this point, Applied Capital was expected to meet only a prima facie burden for showing personal jurisdiction, where a court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted.   *Celgard*, 792 F.3d at 1378.   However, Applied Capital's counsel is reminded that he will have to satisfy the preponderance standard after the parties conduct jurisdictional discovery if there are no jurisdictional facts in dispute.   *Id.*, (citing *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed.Cir.2001)).

This case is referred to U.S. Magistrate Judge Steven C. Yarbrough, who is assigned pretrial matters in this case, in order to set deadlines and the extent of discovery on the following issues, as requested by Applied Capital:

- the number of New Mexicans being served directly by IControl though services such as Piper and IControl One;

- the number of New Mexicans being served directly by IControl via IControl's sales channels and dealers such as Monitronics;

- the number of New Mexicans being served by IControl via software licensed to entities such as ADT, Comcast, and Century Link;

- the revenue IControl receives directly from New Mexicans, the revenue IControl receives for serving New Mexicans, that money having passed through other entities;

- the rights IControl retains to customer information obtained for IControl owned software;

- the rights IControl retains in its licensed software, the locations of IControl's servers, the locations of servers running IControl's software, the scale and nature of the direct contacts (email, SMS, messaging, and surface mail) between IControl and New Mexicans, the revenue IControl receives from the sale of New Mexican's personal information, and the number of Piper Cameras sold into New Mexico.

The following two issues should also be addressed in jurisdictional discovery:

- The status of IControl One as IControl's product or good offered for sale, distribution or marketing;[5]

- Relationship between IControl and Monitronics, and the extent of services, if any, provided to IControl.

**THEREFORE,**

**IT IS ORDERED** that IControl's Motion to Dismiss for Lack of Personal Jurisdiction, **(Doc. 15)** is hereby DENIED at this time for reasons described in this Memorandum Opinion and Order**;**[6]

---

[5]  IControl claims that IControl One has "never been commercially deployed" and that there are "no IControl One customers or commercial users anywhere, let alone New Mexico." Doc. 23 at 7.  Since IControl One is the accused infringing product, it would seem relevant to determine whether this product has actually been deployed, sold or used by any residents in New Mexico.

**IT IS FURTHER ORDERED** that Applied Capital's request for jurisdictional discovery is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FINALLY ORDERED** that this matter is referred to Magistrate Judge Steven Yarbrough, to determine discovery deadlines and handle discovery matters. The discovery is limited to jurisdictional matters, and the Court's outline of discovery issues above may be modified in any way that Judge Yarbrough finds appropriate and necessary. Additionally, at the end of this limited discovery, a new briefing schedule will be set by Judge Yarbrough for the parties to revisit the jurisdictional question incorporating information obtained from jurisdictional discovery.

_____
UNITED STATES DISTRICT JUDGE

---

[6] The complaint refers to "IControl," but the Court adopts the spelling used in Defendant IControl's brief.