### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| APPLIED CAPITAL, INC., | Civil Action No. 1:16-cv-815-WJ-SCY |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| THE ADT CORPORATION and ADT LLC, | |
| Defendants. | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiff Applied Capital, Inc. files this Amended Complaint for Patent Infringement against Defendants The ADT Corporation and ADT LLC d/b/a ADT Security Services, and alleges as follows:

### I.   NATURE OF THE ACTION

1.   This is an action for infringement of U.S. Patent Nos. 8,378,817 and 9,728,082.

2.   Plaintiff Applied Capital, Inc. ("Applied Capital") is a New Mexico corporation with its principal place of business at 1508 Plaza Encantada NW, Albuquerque, New Mexico 87107.

3.   Defendants The ADT Corporation and ADT LLC (collectively, "ADT") are entities duly organized and existing under the laws of the State of Delaware with their principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. Defendants have a regular and

established place of business at 3810 Rutledge Rd NE, Suite A, Albuquerque, New Mexico 87109.[1] Both Defendants have been served and appeared in this action.

## II. JURISDICTION AND VENUE

4.   This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.   Defendants have appeared in this action and have assented to this Court's jurisdiction and the propriety of venue in this forum. *See* Dkt. 16 ¶¶ 5-7 (ADT admits that it is subject to this Court's specific personal jurisdiction and that venue is proper).

6.   This Court has specific and general personal jurisdiction over Defendants pursuant to the New Mexico Long Arm Statute, consistent with due process, because of at least their substantial business in this forum, including: (i) at least a portion of the infringements alleged herein and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to residents of New Mexico and this District. Further, Defendant ADT LLC is registered to do business in New Mexico (Business ID# 4551710).

7.   Plaintiff's causes of action arise directly from Defendants' infringing acts, business contacts, and other activities that occur in and are directed to the State of New Mexico and this District. Defendants, directly and through their intermediaries, use, ship, import, distribute, offer for sale, sell, and/or advertise products and services, including the provision of phone

---

[1] https://www.adt.com/local/nm/albuquerque.

applications and interactive web pages, at least one of which infringes the patents-in-suit, throughout the United States and the State of New Mexico. Defendants solicit customers, including customers of infringing instrumentalities in the State of New Mexico. Defendants also have many customers who are residents of the State of New Mexico, including customers who use Defendants' products and services in New Mexico.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and § 1400(b). Defendants satisfy all three requirements relevant to the inquiry under 28 U.S.C. § 1400(b) because: (1) Defendants have a physical place in this District; (2) it is a regular and established place of business; and (3) the physical place is owned and exclusively controlled by Defendants. *In re Cray Inc.*, No. 2017-129, 2017 WL 4201535, at *4 (Fed. Cir. Sept. 21, 2017). Defendants maintain a regular and established place of business in this District at 3810 Rutledge Rd NE, Suite A, Albuquerque, New Mexico 87109.

### III. THE ACCUSED PRODUCTS

9. ADT offers Internet of Things ("IoT") services and applications that combine ADT's alarm and security service with home automation, allowing users to manage, monitor, and modify their homes from almost anywhere through the ADT Pulse Portal, mobile portal, or the ADT Pulse app for smartphones or tablets (collectively, "ADT PULSE").

10. ADT introduced ADT PULSE in 2010 as the first mass market security and home automation platform available to consumers.

11. ADT PULSE surpassed the 2 million customer milestone by the end of 2016.[2]

---

[2] https://investor.adt.com/investor-resources/faqs/default.aspx.

12. ADT PULSE allows users to connect sensors, lights, and small appliances to Pulse systems.

13. An ADT PULSE user may view a camera feed from a particular room, the "open" or "closed" status of a door, or adjust the thermostat in a particular region of the house, among other functionalities.

14.  ADT PULSE is compatible with Amazon Alexa-enabled devices, allowing an Amazon Alexa device to interact with a Pulse system through simple voice commands and a secure PIN to, for example, turn lights on and off.

15. ADT PULSE offers the ability to secure real-time video, remotely arm and disarm a system or door lock, and control temperature and lighting. ADT claims that ADT PULSE set the industry standard by combining the best of security and home automation.

16. In January 2017, customers logged into their ADT PULSE app nearly 57 million times, adjusting their thermostat in 67 million instances and capturing over 436 million video clips.

17. ADT also offers web and mobile applications that track family members, send notifications when family members arrive at their destinations, detect crashes when family members are driving, and call emergency response services automatically in the event of an emergency (collectively, "ADT GO").

18. ADT introduced ADT GO in early 2017 under the tradename "ADT Anywhere." ADT rebranded the service as ADT GO a year later and shortly after, announced an early adopter free trial period which continues through June 2018.

19. Since the release of the ADT GO app for Android devices, it has been downloaded and installed over 10,000 times. The ADT GO app is also available on Apple's App Store.

20. An ADT home security system purchase is not necessary to download and use the ADT GO app.

21. In 2016, ADT reported $501.7 million in multi-subsystem smart-home revenue, a 260% growth over the previous year.

22. Recurring subscriptions account for 90% of ADT's revenue, and the number of subscriptions has increased in recent years since the introduction of ADT PULSE.

23. ADT has a pending IPO that could raise $1.5 billion, which focuses on IoT, ADT PULSE and ADT GO.

24. Currently, home automation is projected to have a double-digit compound annual growth rate.

## IV. THE PATENTS

25. U.S. Patent No. 8,378,817 (the "'817 Patent"), titled "Premises Monitoring System," was duly and legally issued by the United States Patent and Trademark Office on February 19, 2013. A true and correct copy of the '817 Patent was previously attached to Plaintiff's Original Complaint as Exhibit A. *See* Dkt. 1-2.

26. The '817 Patent originated from U.S. Application No. 12/695,373 (the "'373 Application"), which was filed on January 28, 2010.

27. The '817 Patent claims priority to and incorporates by reference U.S. Provisional Application Nos. 61/147,948 and 61/228,044, filed on January 28, 2009 and July 23, 2009

respectively. The '817 Patent also incorporates by reference Appendix A, attached hereto as Exhibit P. Dkt. 1-2 at 14.[3]

28. Applied Capital is the owner of all right, title, and interest in and under the '817 Patent with full rights to enforce the patent, including the right to recover for past damages.

29. All requirements under 35 U.S.C. § 287 have been satisfied with respect to the '817 Patent.

30. Every claim of the '817 Patent is valid and enforceable and enjoys a statutory presumption of validity pursuant to 35 U.S.C. § 282.

31. U.S. Patent No. 9,728,082 (the "'082 Patent"), titled "Premises Monitoring System," was duly and legally issued by the United States Patent and Trademark Office on August 8, 2017. A true and correct copy of the '082 Patent is attached hereto as Exhibit Q.

32. The '082 Patent is a continuation of the '817 Patent and claims priority to and incorporates by reference the '373 Application, as well as U.S. Provisional Application Nos. 61/147,948 and 61/228,044, filed on January 28, 2009 and July 23, 2009 respectively. The '082 Patent also incorporates by reference Appendix A. Ex. Q at 13.

33. Applied Capital is the owner of all right, title, and interest in and under the '082 Patent with full rights to enforce the patent, including the right to recover for past damages.

34. All requirements under 35 U.S.C. § 287 have been satisfied with respect to the '082 Patent.

---

[3] All page numbers in documents filed with the Court reference the ECF system page numbers, not internal page numbers or labels.

35. Every claim of the '082 Patent is valid and enforceable and enjoys a statutory presumption of validity pursuant to 35 U.S.C. § 282.

36. The fields of invention disclosed and claimed in the '817 Patent and the '082 Patent include electrical communications, image analysis relating to target tracking and detection, and telecommunications with location monitoring. *See* Dkt. 1-2 at 3.

37. At the time of filing, the technology disclosed and claimed in the '817 Patent and the '082 Patent was not well-understood, routine, or conventional to a skilled artisan in the fields of the invention; rather, the technology claimed in both patents was well ahead of the state of the art at the time of the invention. For example, at the time the '373 Application was filed, IoT, which is now a staple in any modern home, was not yet fully realized. Smartphones had only just begun to gain prominence in the day-to-day lives of users around the country and cloud data did not yet allow universal access to one's media and computing systems.

38. For example, early efforts toward the realization of an IoT network such as Z-Wave allowed devices to communicate not only over a Wi-Fi network, but also between one another.[4] While the communication protocols offered by Z-Wave allowed more efficient on-site data transmission, it is only by combining such technology with aggregation hardware as is present in the claimed invention that a human-useable output can be realized.

39. Recognizing the ongoing development in fields related to IoT, the '373 Application responded to the rising need for integration of home electronics options by proposing novel hardware specialized to create a network for the various forms of information provided by the

---

[4] https://z-wavealliance.org/about_z-wave_technology/.

ever-increasing options for home security, surveillance, and control. *See* Dkt. 1-2 at 14; Ex. P at 2-3.

40. Specifically, the '373 Application contemplated features of hardware which could be robust enough to perform home security and automation tasks effectively without requiring excessive user involvement. The '373 Application taught that such hardware might include components that are able to operate in any environment in which a human could comfortably live and work, as well as having thermal control components allowing it to continue operating without the need for complex ventilation infrastructure. *See* Ex. P at 13.

41. For example, to promote universal compatibility with current and forthcoming data transfer protocols, the '373 Application also contemplated the desirability of arranging a broad variety of input/output options in a novel combination and number not normally provided in consumer electronics. *See* Ex. P at 13-16. In addition, the system disclosed the integration of battery backup systems with this hardware to avoid loss of data or service in the event of a power outage. *See* Ex. P at 85.

42. The hardware described by the '373 Application was further specialized by, for example, incorporating a variety of digital and telecommunications protocols to provide connectivity not only to the user's home electronics, but also to the outside world. The purpose of this inventive combination of telecom hardware with networking hardware is to allow information generated and received by the hardware to be dispatched to users, emergency services, and any other chosen destination as needed in ways beyond a human's normal capability to aggregate data by merely collecting and displaying it. Instead, the invention

transforms dissimilar inputs into mutually compatible outputs for use by a broad variety of recipients. *See* Ex. P at 15-16.

43. The critical importance of rapidly compiling, transforming, and presenting information from multiple sources in a way which is automated and accessible as is made possible by the invention can be observed by considering a home burglary or fire. In such a situation, the rapidity and accuracy of response is not merely a consumer feature, it is a primary factor in avoiding loss of life or property. *See* Ex. P at 23-24.

44. For example, a user may wish to view a video feed generated by a camera which they have set up in some portion of their house. Because video data demands high-bandwidth communication methods in order to view in real-time, a phone line would be incapable of providing a user with a timely viewing of their camera output. Digital communication standards are better suited to such purposes, as contemplated by the '373 Application. *See* Ex. P at 55.

45. Conversely, many emergency service providers had not yet transitioned to the most technically advanced communication standards now available, instead relying on "tried and true" standards. Thus, in order to allow the hardware to alert emergency services of, for example, a break-in or a fire, the hardware might rely on more traditional phone line-based communication standards. *See* Ex. P at 16. The '373 Application contemplates combining all of these methods so that regardless of what the circumstances call for, the hardware is capable of dispatching the necessary information to the appropriate destination. *See* Ex. P at 13-15.

46. Alongside the novel hardware suggested by the '373 Application, the invention additionally describes desirable methods and systems to be combined with hardware to achieve the '373 Application's goal of fully integrating the disparate outputs of home electronics into a single consumable form for users. *See* Ex. P at 23-24.

47. In particular, the '082 Patent claims the computerized embodiments of the overarching invention described in the '373 Application. Methods and systems allowing the invention to be accessible not only from the hardware contemplated by the invention but also from remote locations was disclosed—while remote access to hardware is now an expectation of consumers, such implementations were state of the art when the '373 Application was filed. *See* Dkt. 1-2 at 20; Ex. P at 29, 98.

48. The methods and systems described and employed by the '373 Application further contemplate the generation and dispatch of various special forms of images suited to the chosen destination, be it a user, emergency services, or another entity. *See e.g.* Dkt. 1-2 at 20; Ex. P at 3, 10-11, 35-36, 69.

49. For example, the system might generate or receive superimposed images denoting the location of sensors on an automatically or user-created floor plan of a building. *See* Dkt. 1-2 at 15.

50. In another example, the method of generating or receiving hierarchical images which contain layers of data representative of the layout of a building, the location of sensors, the output of those sensors, or other information suited to this form of image output might be used by the system. *See* Dkt. 1-2 at 14.

51. The methods and systems of the invention may also generate or receive vector images which are capable of being scaled arbitrarily in order to fit on display hardware of any size and allow a user to zoom in to view details of the image without loss of quality. *See* Dkt. 1-2 at 16.

52. The invention is also specially adapted to be integrated with modern encryption technology to protect the privacy of its users by making data unreadable if intercepted.

53. The specific embodiments disclosed in the '817 Patent and the '082 Patent make the inventive concepts at the heart of the invention plainly visible. In one example, the specification of both patents contemplates hardware which is integrated with existing fire detection electronics to constantly monitor the current state of these systems. *See* Dkt. at 14; Ex. P at 55.

54. If a fire is detected, graphical images indicating the location and nature of the fire might be generated or received along with the raw signal output of the fire detector. Such information can be dispatched not only to the user of the invention, but also to the owner of the building or to fire response services. This information can include more than simply the presence of a fire, in ideal embodiments, the exact location and even temperature of the fire may be provided. *See* Dkt. at 14; Ex. P at 23-24. By providing more information than is normally available in such an emergency, faster and more effective responses to the emergency are made possible. *See* Dkt. 1-2 at 14.

## COUNT 1 - INFRINGEMENT OF THE '817 PATENT

55. Defendants have never, either expressly or impliedly, been licensed under the '817 Patent.

56. Defendants have been and continue to directly infringe, literally and/or under the doctrine of equivalents, at least claims 1-3, 6-9, and 11-15 of the '817 Patent by making, using, offering for sale, selling, and/or importing in or into the United States products and/or services that embody the apparatuses and practice one or more claims of the '817 Patent in violation of § 271(a), including, but not limited to, ADT PULSE and ADT GO (collectively, the "Accused Instrumentalities"), as shown in Exhibits R and S.[5]

57. Defendants, by and through the Accused Instrumentalities, perform the steps of the methods recited by the '817 Patent's claims.

58. Defendants perform the step of receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems, for example receiving an alarm signal indicating an open window or a driving event. *See* Ex. R at 1-4; Ex. S at 1-5.

59. ADT Pulse is compatible with Z-Wave, which assigns a unique identification number to each device, allowing ADT PULSE to identify the source of each signal received. *See* Ex. R at 2-3.

60. ADT GO identifies mobile devices, including cell phones, using their device ID. *See* Ex. S at 3.

61. During the step of retrieving enhanced information based on the device identifier and the device condition, Defendants further perform the steps of retrieving images based on the

---

[5] These charts are exemplary of all Defendants' Accused Instrumentalities.

device identifier and the device condition by creating and loading floor plans or maps of user driving events. *See* Ex. R at 5-6, 10-14; Ex. S at 6-7, 10-13.

62. Defendants perform the step of determining one or more communication methods and communication destinations based on the device identifier and the device condition by enabling the system to send an email or text to a cell phone or PDA indicating a specific alert such as an open window or notify emergency contacts in case of a crash. *See* Ex. R at 7-8; Ex. S at 8.

63.  The step of dispatching the enhanced information to the one or more communication destinations using the one or more communication methods is further met by Defendants by transmitting an attached picture or link via an alert. *See* Ex. R at 9; Ex. S at 9.

64. During the step of receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems, Defendants further perform the steps of receiving one or more signals containing a device identifier for a smoke detector, a pull station, a security detector, a carbon monoxide detector, and a check-in monitor from one or more remote alarm monitoring systems by sending alerts from various sensors such as fire, flood, and carbon monoxide sensors when triggered. *See* Ex. R 15-16.

65. During the step of receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems, Defendants further perform the step of receiving one or more signals containing a device condition of normal, fault, and supervisory from one or more remote alarm monitoring systems by tracking events such as alarms being cleared, tampered with, and tripped. *See* Ex. R at 17.

66. Defendants further perform the step of receiving one or more signals containing a device condition of normal, fault, and supervisory from one or more remote alarm monitoring system by receiving signals from mobile devices indicating an ongoing driving event, depletion of battery, and a crash event. *See* Ex. S at 14.

67. During the step of retrieving enhanced information based on the device identifier and the device condition, Defendants further perform the step of retrieving enhanced information including one or more communication links based on the device identifier and the device condition by providing links to view more information about an event. *See* Ex. R at 18-19; Ex. S at 15-16.

68. During the step of retrieving enhanced information including one or more communication links based on the device identifier and the device condition, Defendants further perform the step of retrieving enhanced information including one or more communication links organized on one or more graphical images based on the device identifier and the device condition by providing links to view more information on portions of their software which display images such as maps and camera outputs. *See* Ex. R at 20; Ex. S at 17.

69. During the step of retrieving enhanced information based on the device identifier and the device condition, Defendants further perform the step of retrieving enhanced information including written information based on the device identifier and the device condition by receiving and displaying strings indicating the numeric output or status of a sensor. *See* Ex. R at 21.

70. During the step of retrieving enhanced information based on the device identifier and the device condition, Defendants further perform the step of retrieving enhanced information including written information based on the device identifier and the device condition by receiving and displaying strings indicating the number of times a particular event has occurred. *See* Ex. S at 18.

71. During the step of retrieving enhanced information including written information based on the device identifier and the device condition, Defendants further perform the step of retrieving enhanced information including date/time information, account information, premises information, device information, condition information, support information, contact information, linked information, and instructional information based on the device identifier and the device condition by providing dates and times of notable events, such as when a particular alarm was triggered. *See* Ex. R at 22-23.

72. During the step of determining one or more communication methods and communication destinations based on the device identifier and the device condition, Defendants further perform the step of determining one or more communication methods of email, text message, instant message, website link, phone, and mail based on the device identifier and the device condition by opting to send alerts to users via email, text message, or push notification. *See* Ex. R 24; Ex. S at 19.

73. During the step of determining one or more communication methods and communication destinations based on the device identifier and the device condition, Defendants further perform the step of determining one or more device communication

destinations of a personal computer, a phone, a mobile device, a display, and a custom device based on the device identifier and the device condition by selecting and sending an alert to a specific device such as a cellphone or computer. *See* Ex. R at 25; Ex. S at 20.

74. During the step of determining one or more communication methods and communication destinations based on the device identifier and the device condition, Defendants further perform the step of determining one or more entity communication destinations of an authority, a first responder, a service company, an owner, a manager, a staff, an occupant, a supplier, a customer, a neighbor, and a custom entity based on the device identifier and the device condition by selecting an alert recipient based on the event, for example an owner or emergency contact. *See* Ex. R at 26-27; Ex. S at 21.

75. During the step of dispatching the enhanced information to the one or more communication destinations using the one or more communication methods, Defendants further perform the step of dispatching the enhanced information automatically without requiring operator intervention to the one or more communication destinations using the one or more communication methods by automatically sending notifications when an alarm or event is triggered. *See* Ex. R at 28; Ex. S at 22.

76. Defendants further perform the step of receiving enhanced information, one or more communication methods, and one or more communication destinations via a user interface that is remotely accessible by providing software to receive information from their systems on a mobile device or personal computer from "virtually anywhere."[6] *See* Ex. R at 29.

---

[6] https://www.adt.com/pulse.

77. Defendants have had actual knowledge of the '817 Patent since no later than April 15, 2015 when James M. Scott, President of Applied Capital, discussed the '817 Patent with Raymond North, ADT's director of platform services, and provided Mr. North with a two-page summary of the '817 Patent. On or about April 20, 2015, Mr. Scott emailed a copy of the '817 Patent to Mr. North. In responsive emails, Mr. North confirmed receipt and alleged that ADT had analyzed the '817 Patent and claimed it was not interested in it. *See* Dkt. 1-10.

78. Defendants have continued making, using, offering for sale, selling, and/or importing the Accused Instrumentalities despite an objectively high likelihood that their actions infringe at least claims 1-3, 6-9, and 11-15 of the '817 Patent.

79. Defendants' direct and willful infringement of the '817 Patent has caused, and will continue to cause, substantial damage to Plaintiff. Therefore, Plaintiff is entitled to an award of damages adequate to compensate for Defendants' infringement, but not less than reasonable royalty, together with pre-and post-judgment interest and costs as fixed by the Court under 35 U.S.C. § 284.

80. Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute demonstrate an exceptional case within the meaning of 35 U.S.C. § 285, and therefore, Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## COUNT 2 - INFRINGEMENT OF THE '082 PATENT

81. Defendants have never, either expressly or impliedly, been licensed under the '082 Patent.

82. Defendants have been and continue to infringe, literally and/or under the doctrine of equivalents, at least claims 1-3, 6-9, 11-15, and 17 of the '082 Patent by making, using, offering for sale, selling, and/or importing in or into the United States the Accused Instrumentalities, which embody one or more claims of the '082 Patent in violation of § 271(a), as shown in Exhibits T and U.[7]

83. The Accused Instrumentalities include code receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems, for example receiving an alarm signal indicating a tripped fire alarm or driving event. *See* Ex. T at 1-4; Ex. U at 1-5.

84. ADT PULSE identifies each sensor from which it receives signals. *See* Ex. T at 3.

85. ADT GO identifies mobile devices, including cell phones, using their device ID. *See* Ex. U at 3.

86. The Accused Instrumentalities include code for retrieving enhanced information based on the device identifier and the device condition and retrieving images based on the device identifier and the device condition, for example, by providing images of a floor plan or a map of a user's driving events for display. *See* Ex. T at 5-6, 10-14; Ex. U at 6-7, 10-13.

87. The Accused Instrumentalities include code for determining one or more communication methods and communication destinations based on the device identifier and the device condition by providing parameters and opting to send a text, email, or push notification to a user in response to an event. *See* Ex. T at 7-8; Ex. S at 8.

---

[7] These charts are exemplary of all Defendants' Accused Instrumentalities.

88. The Accused Instrumentalities include code for dispatching the enhanced information to the one or more communication destinations using the one or more communication methods by transmitting an attached picture or link. *See* Ex. T at 9; Ex. U at 9.

89. The Accused Instrumentalities include code for receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems which additionally comprises code receiving one or more signals containing a device identifier for a smoke detector, a pull station, a security detector, a carbon monoxide detector, and a check-in monitor from one or more remote alarm monitoring systems by sending alerts from various sensors such as fire, flood, and carbon monoxide sensors when triggered. *See* Ex. T at 15-16.

90. The Accused Instrumentalities include code for receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems which additionally comprises code receiving one or more signals containing a device condition of normal, fault, and supervisory from one or more remote alarm monitoring systems by tracking events such as alarms being cleared, tampered with, and tripped. *See* Ex. T at 17.

91. The Accused Instrumentalities include code for receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems which additionally comprises code receiving one or more signals containing a device condition of normal, fault, and supervisory from one or more remote

alarm monitoring systems by receiving signals from mobile devices indicating an ongoing driving event, depletion of battery, and a crash event. *See* Ex. U at 14.

92. The Accused Instrumentalities include code for retrieving enhanced information based on the device identifier and the device condition which additionally comprises code for retrieving enhanced information including one or more communication links based on the device identifier and the device condition by providing links to view more information about an event. *See* Ex. T at 18-19; Ex. U at 15-16.

93. The Accused Instrumentalities include code for retrieving enhanced information including one or more communication links based on the device identifier and the device condition which additionally comprises code for retrieving enhanced information including one or more communication links organized on one or more graphical images based on the device identifier and the device condition. *See* Ex. T at 20; Ex. U at 17.

94. The Accused Instrumentalities include code for retrieving enhanced information based on the device identifier and the device condition which additionally comprises code for retrieving enhanced information including written information based on the device identifier and the device condition by receiving and displaying strings indicating the numeric output or status of a sensor. *See* Ex. T at 21.

95. The Accused Instrumentalities include code for retrieving enhanced information based on the device identifier and the device condition which additionally comprises code for retrieving enhanced information including written information based on the device identifier

and the device condition by receiving and displaying strings indicating the number of times a

particular event has occurred. Ex. U at 18.

96. The Accused Instrumentalities include code for retrieving enhanced information

including written information based on the device identifier and the device condition which

additionally comprises code for retrieving enhanced information including date/time

information, account information, premises information, device information, condition

information, support information, contact information, linked information, and instructional

information based on the device identifier and the device condition by providing dates and

times of notable events, such as when a particular alarm was triggered. *See* Ex. T at 22-23.

97. The Accused Instrumentalities include code for determining one or more

communication methods and communication destinations based on the device identifier and

the device condition which additionally comprises code for determining one or more

communication methods of email, text message, instant message, website link, phone, and

mail based on the device identifier and the device condition by opting to send alerts to users via

email, text message, or push notification. *See* Ex. T at 24; Ex. U at 19.

98. The Accused Instrumentalities include code for determining one or more

communication methods and communication destinations based on the device identifier and

the device condition which additionally comprises code for determining one or more device

communication destinations of a personal computer, a phone, a mobile device, a display, and

a custom device based on the device identifier and the device condition by selecting and

sending an alert to a specific device such as a cell phone or computer. *See* Ex. T at 25; Ex. U at 20.

99. The Accused Instrumentalities include code for determining one or more communication methods and communication destinations based on the device identifier and the device condition which additionally comprises code for determining one or more entity communication destinations of an authority, a first responder, a service company, an owner, a manager, a staff, an occupant, a supplier, a customer, a neighbor, and a custom entity based on the device identifier and the device condition by selecting an alert recipient based on the event, for example an owner or emergency contact. *See* Ex. T at 26-27; Ex. U at 21.

100.    The Accused Instrumentalities include code for dispatching the enhanced information to the one or more communication destinations using the one or more communication methods which additionally comprises code for dispatching the enhanced information automatically without requiring operator intervention to the one or more communication destinations using the one or more communication methods, by automatically sending notifications when an alarm or event is triggered. *See* Ex. T at 28; Ex. U at 22.

101.    The Accused Instrumentalities additionally include code for receiving enhanced information, code for providing one or more communication methods, and code for providing one or more communication destinations via a user interface that is remotely accessible by providing software to receive information from their systems on a mobile device or personal computer from "virtually anywhere."[8] *See* Ex. T at 29.

---

[8] https://www.adt.com/pulse.

102.     The Defendants' Accused Instrumentalities are each a computerized system acting as a central monitoring system.

103.     The Defendants' computerized system performs the step of receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems. *See* Ex. T at 30-32; Ex. U at 23-26.

104.     The Defendants' computerized system performs the step of retrieving enhanced information based on the device identifier and the device condition, the enhanced information comprising images based on the device identifier and the device condition. *See* Ex. T at 33-34, 38-42; Ex. U at 27-28, 31-34.

105.     The Defendants' computerized system performs the step of determining one or more communication methods and communication destinations based on the device identifier and the device condition. *See* Ex. T at 35-36; Ex. U at 29.

106.     The Defendants' computerized system performs the step of dispatching the enhanced information to the one or more communication destinations using the one or more communication methods. *See* Ex. T at 37; Ex. U at 30.

107.     Defendants' direct infringement of the '082 Patent has caused, and will continue to cause, substantial and irreparable damage to Plaintiff. Plaintiff is therefore entitled to an award of damages adequate to compensate for Defendants' infringement, but not less than reasonable royalty, together with pre-and post-judgment interest and costs as fixed by the Court under 35 U.S.C. § 284.

108.     Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute demonstrate an exceptional case within the meaning of 35 U.S.C. § 285, and therefore, Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## V.  PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for entry of judgment against Defendants as follows:

A.     A judgment that the '817 Patent and the '082 Patent are valid and enforceable;

B.     That Defendants have infringed and continue to infringe the '817 Patent and the '082 Patent, directly and/or indirectly, as alleged herein;

C.     That Defendants provide to Plaintiff an accounting of all gains, profits, and advantages derived by Defendants' infringement of the '817 Patent and the '082 Patent, and that Plaintiff be awarded damages adequate to compensate it for the wrongful infringement by Defendants, in accordance with 35 U.S.C. § 284;

D.     That Plaintiff be awarded any other supplemental damages and interest on all damages, including, but not limited to, attorneys' fees available under 35 U.S.C. § 285; and

E.     That Plaintiff be awarded such other and further relief and all remedies available at law.

## VI. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable to a jury.

DATED: June 14, 2018                    /s/ *Alfonso Garcia Chan*
                                        Luis M. Ortiz
                                        lortiz@olpatentlaw.com
                                        Richard Krukar
                                        krukar@olpatentlaw.com

                                        ORTIZ & LOPEZ, PLLC
                                        117 Bryn Mawr Dr. S.E., Suite 101
                                        Albuquerque, NM 87106
                                        Tel: (505) 314-1310

                                        Alfonso Garcia Chan
                                        achan@shorechan.com
                                        Andrew M. Howard*
                                        ahoward@shorechan.com
                                        Russell J. DePalma
                                        rdepalma@shorechan.com
                                        Paul T. Beeler*
                                        pbeeler@shorechan.com
                                        Shukri Abdi*
                                        sabdi@shorechan.com

                                        SHORE CHAN DEPUMPO LLP
                                        901 Main Street, Suite 3300
                                        Dallas, TX 75202
                                        Tel: (214) 593-9110
                                        Fax: (214) 593-9111

                                        * Admitted pro hac vice

                                        *Attorneys for Plaintiff Applied Capital, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2018, I electronically filed the foregoing with the Clerk for the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_/s/ Alfonso Garcia Chan_
Alfonso Garcia Chan