IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


APPLIED CAPITAL, INC.,

         Plaintiff,

  vs.                              Civil Action No. 1:16-cv-00815

THE ADT CORPORATION and ADT LLC,         **MEMORANDUM AND ORDER**
                                        **ON CLAIM CONSTRUCTION**

         Defendants.

---

      This matter is before the Court for resolution of issues of claim construction after a hearing on June 14, 2019, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Also pending is an emergency motion to preclude expert testimony and to strike untimely claim construction positions. Doc. 137. Expert testimony was not received at the hearing, nor was the construction of "superimposed visual indicators" argued or addressed at the hearing. Consequently, the motion is moot.

I. BACKGROUND

      Applied Capital, Inc. ("Applied") filed this action for patent infringement against defendants The ADT Corporation and ADT, LLC (collectively, "ADT"). At issue are U.S. Patent Nos. 8,378,817 ("'817 patent") and 9,728,082 ("'082 patent"), entitled "Premises Monitoring System," which relate generally to computer systems, and more specifically, to an improved premise monitoring system in connection with home security systems

and alarms. Plaintiff Applied is the assignee of the '817 patent and the '082 patents. It alleges defendants ADT Corporation and ADT, LLC ("ADT") infringe the '817 patent and the '082 patent. The '082 patent is a continuation of the '817 patent and both patents share the same title, inventor, and disclosure (the "Common Specification"). The patents differ only in their particular implementation and claims. The '817 patent is a method patent for methods and systems of interfacing with a home security system, accessible not only from hardware contemplated by the invention, but from remote locations. The '082 patent describes a "non-volatile and non-transient computer-readable medium comprising machine-executable code" performing steps identical to those of claim 1 of the '817 patent. The '082 patent claims the computerized embodiments of the invention described in the '817 patent.

Claim 1, the only independent claim of the '817 patent, is representative of the asserted claims. It provides:[1]

1. A method comprising:

> receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems; retrieving enhanced information based on the device identifier and the device condition; determining one or more communication methods and communication destinations based on the device identifier and the device condition; and dispatching the enhanced information to the one or more communication destinations using the one or more communication methods; and wherein the retrieving enhanced information based on the device identifier and the device condition comprises retrieving images based on the device identifier and the device condition, the images comprising all of the members selected from the group consisting of superimposed visual

---

[1] The '082 patent includes two independent claims, and both are nearly identical to claim 1 of the '817 patent.

2

indicators, hierarchically organized graphical images,
and vector-based graphical images.

Doc. 102-2, Ex. 1 at 18:45-63; *see also* Ex. 1, FIG. 1.

Applied generally contends that the claims of the patent in question define the invention in clear and simple terms that a jury can understand.  Defendants disagree and contend that this Court should construe a number of the terms and phrases.  The Court held oral argument on the motions on June 14, 2019.  The Court has carefully reviewed all submissions and pleadings by the parties, and in particular those submissions relating to the claim constructions and reviewed the relevant caselaw.  The court makes the following findings.

II.  DISCUSSION

A.  Law

The claims of a patent define the scope of the patent.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).  The claims of a patent are of primary importance in determining what is patentable and the function and purpose of a claim is to "delimit the right to exclude."  *Id.* at 1312.  The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman,* 52 F.3d at 976.  The construction of the terms in a patent is a matter of law reserved entirely for the court.  *Markman*, 517 U.S. at 372.  A claim construction order will dictate how the court will instruct the jury regarding a claim's scope.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008).  "A district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims."

*Id.* However, when the parties raise an actual dispute regarding the proper scope of these claims, the Court, not the jury, must resolve that dispute. *Id.* at 1360.

The words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art in question at the time of the invention. *Phillips*, 415 F.3d at 1313. The inquiry into how a person of ordinary skill in the art understands a term provides an objective baseline for which to begin claim interpretation. *Id.* Importantly, a person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed claim appears, but in the context of the entire patent, including the specification. *Id.* (noting that a court does not look to the ordinary meaning of the term in a vacuum; it must look at the ordinary meaning in the context of the written description and the prosecution history).

Absent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis. *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008). "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent. *Id.* In cases that involve "little more than the application of the widely accepted meanings of commonly understood words," general purpose dictionaries may be helpful, but in many cases, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular

meaning in a field of art and the court "must look to those sources that are available to the public that show what a person of skill in the art would have understood the disputed claim language to mean." *Id.* at 1314. "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

The claims themselves provide substantial guidance as to the meaning of particular claim terms, quite apart from the written description and the prosecution history. *Phillips*, 415 F.3d at 1314. The context in which a term is used is highly instructive—other claims of the patent in question can also be "valuable sources of enlightenment as to the meaning of a claim term," as can differences among claims. *Id.* (also noting that the usage of term in one claim can often illuminate the meaning of the same term in other claims). Generally, courts reject construing entire sentences. *See, e.g., Oplus Techs., Ltd. v. Vizio, Inc.*, No. 12-05707, 2012 WL 5519198, *1 (C.D. Cal. Oct. 31, 2012) ("Indeed, construing 50–word phrases heighten the risk of a Court rewriting claims").

Because the claims do not stand alone, but are part of a fully integrated written instrument, the specification is usually the best guide to the meaning of a disputed term. *Id.* The specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess; in such cases, the inventor's lexicography governs. *Id.* Departing from a term's plain meaning is appropriate when the patentee acted as its own lexicographer. *See Honeywell Int'l, Inc.*

*v. Universal Avionics Sys. Corp.*, 493 F.3d 1358, 1361 (Fed. Cir. 2007) ("When a patentee defines a claim term, the patentee's definition governs, even if it is contrary to the conventional meaning of the term").

The patent's prosecution history, if it is in evidence, should be considered, second in importance to the patent's specification. *Id.* at 1317 (noting, however, that because it represents an ongoing negotiation, the prosecution history "often lacks the clarity of the specification and is thus less useful for claim construction purposes"). When looking at a specification in the patent, the court adheres to two axioms: (1) claims 'must be read in view of the specification, of which they are a part, and (2) a court may not read a limitation from the specification into the claims. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004); *Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1332 (Fed. Cir. 2001). The distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be difficult to apply in practice. *Phillips*, 415 F.3d 1323. The purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so, and "[o]ne of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case." *Id.* On reading the specification in that context, it will often become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive. *Id.* (noting also that "there will still remain some cases in which it will be hard to determine whether a person of skill in the art would

6

understand the embodiments to define the outer limits of the claim term or merely to be exemplary in nature"). A construction that excludes the preferred embodiment of a patent is "rarely, if ever, correct." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010).

Although intrinsic evidence is preferred, courts are also authorized to rely on extrinsic evidence "which consists of all evidence external to the patent and prosecution history including expert and inventor testimony, dictionaries and learned treatises." *Phillips*, 415 F.3d 1323 (noting that "extrinsic evidence is less significant than the intrinsic record in determining the 'legally operative meaning of claim language'"). *Id.* The court is guided in its endeavor by several "canons of construction" or guideposts. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1376 (Fed. Cir. 2001). Under the doctrine of claim differentiation, a dependent claim has a narrower scope than the claim from which it depends and an independent claim has a broader scope than the claim that depends from it. *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1351 (Fed. Cir. 2005). Also, ordinarily, claims are not limited to the preferred embodiments disclosed in the specification. *Phillips*, 415 F.3d at 1323. Different words in a patent have different meanings and the same words have the same meaning. *Innova/Pure Water, Inc.*, 381 F.3d at 1119-20. Use of the open-ended term of art, "comprising," allows the addition of other elements so long as the named elements, which are essential, are included. *See Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986) (noting that "comprising" opens a method claim to the inclusion of additional steps, but does not affect the scope of the structure recited within the steps).

If possible, claims should be construed so as to preserve the claim's validity, but that maxim is limited "to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'" *Phillips*, 415 F.3d at 1327 (quoting *Liebel-Flarsheim,* 358 F.3d at 911). When a document is "incorporated by reference" into a host document, such as a patent, the referenced document becomes effectively part of the host document as if it were explicitly contained therein. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001).

B. Claim Construction

The Court has carefully reviewed the patent at issue and the intrinsic evidence. The court's claim construction is generally guided by the language of the claims, in the context of the other claims of the patent and the specifications. The intrinsic evidence of record provided a sufficient foundation for the court's claim construction. No expert testimony was adduced at the hearing. All of the terms appear in claim 1 of the '817 patent and in claims 1 and 17 of the '082 patent.

1. Agreed-Upon Claim Terms

A. "superimposed visual indicators"

The parties agree that no construction necessary.

B. "hierarchically organized graphical images"

The parties agree that the phrase "hierarchically organized graphical images" should be construed as "a group of graphical images arranged relative to one another and/or accessible through one another."

C. "superimposed visual indicators"

The parties agree no construction of this term is necessary. *See* Doc. 138, Transcript at 8.

8

2. Disputed Terms

A. "vector-based graphical images"

Applied proposes the term be construed as "images that include one or more vectors."  ADT proposes the term be construed as "vector image files."

The crux of the dispute is whether "vector-based graphical images" encompass vector-based images stored in any type of data structure (e.g., in a database record, a file, etc.) or whether the term is limited only to vector-based images stored as "files." Applied argues that nothing in the claims or the intrinsic record as a whole requires the retrieved vector-based images to be stored as files.

The Court agrees with the plaintiff that the asserted claims themselves recite code for the step of "retrieving images" that include all of "super imposed visual indicators, hierarchically organized graphical images, and vector-based graphical images."  The claims are not limited to "retrieving image files."  In other words, the express language of the claims encompasses retrieval of vector-based images that are not stored as files.

Nothing in the claims or the intrinsic record as a whole requires the retrieved vector-based images—or any other type of images—to be stored as files.  Further, the specification does not refer to images as files, nor describe retrieving images stored as files.  The specification plainly describes embodiments where enhanced information including images is retrieved from a "data source" that could be a database or some other data store that is not necessarily file storage.  The specification explicitly contrasts such embodiments with others where images are instead retrieved from sources arguably suggestive of file storage such as a camera or video camera of premises, a

computer of premises, a laptop, a tablet, a computer, a phone, a personal digital assistant, and/or a remote or independent data source.  *See* Doc. 102-2, Ex. 1, '817 patent at 4:47-55.  Though a PDF file is referred to as an example of a dispatched image, it would be a limiting interpretation to limit the claims to retrieval of vector-based images stored only as files.  There does not appear to be much dispute about whether "vector-based graphical images" would include one or more vectors.  Accordingly, The court finds Applied's proposal should be adopted and "vector-based graphical images" will be construed as "images that include one or more vectors."

> B. "determining one or more communication methods and communication destinations based on the device identifier and the device condition"

Applied contends that no construction is necessary, whereas ADT proposes: "the one or more communication methods are determined based on the device identifier and the device condition; and the one or more communication destinations are determined based on device identifier and the device condition."

Applied argues that the defendants' interpretation would change the meaning of the phrase.  ADT"S proposal would alter the language from meaning that determining the communication method and destination should be with reference to both the device identifier and device condition, to separately determining device and condition with respect to method and to destination.

The record shows that the PTAB understood that the "determining" step provides the antecedent basis for the "dispatching" step's reference to "the one or more communication destinations" and "the one or more communication methods."  Doc. No. 117-6, Ex. E. Inter Partes Review decision at ECF 13.  The PTAB found the determining step "requires that the claimed communication methods and communication

10

destinations *both* must be determined 'based on the device identifier and the device condition.'" *Id.* at ECF 14 (emphasis added).

The Court agrees that the claim only requires that both the communication methods and communication destinations must be determined based on the device identifier and the device condition, but this does not mean that the steps need to be performed separately. The patents teach that communication methods (i.e., text message, e-mail) and destinations (i.e., e-mail accounts, instant messenger accounts, phone numbers) may be determined simultaneously or in a single step from the same information. ADT's construction would add a limitation not present in any of the claims. Accordingly, the court finds no construction is necessary.

> C. "dispatching the enhanced information to the one or more communication destinations using the one or more communication methods; [and] wherein the [retrieving] enhanced information based on the device identifier and the device condition comprises [retrieving] images based on the device identifier and the device condition, the images comprising all of the members selected from the group consisting of superimposed visual indicators, hierarchically organized graphical images, and vector-based graphical images"

Applied again proposes no construction of the phrase. On the other hand, ADT proposes:

> retrieving superimposed visual indicator images based on the device identifier and the device condition; retrieving hierarchically organized graphical images based on the device identifier and the device condition; retrieving vector-based graphical images based on the device identifier and the device condition; and then dispatching the superimposed visual indicator images, the hierarchically organized graphical images, and the vector-based graphical images to the determined communication destination using the determined communication method.

The parties' dispute revolves around whether claim 1 requires performing three separate graphical information retrieval steps. Applied argues that ADT's proposed construction implies that the claim requires three separate retrieving steps. Applied

11

takes the position that all three pieces of information are required by the terms of the patent but the process can be done in one step as opposed to three. It argues that the "wherein" clauses of Claims 1 and 17 modify the "retrieving step and require all of the members of a group consisting of three kids of graphical components: 1) superimposed visual indicators, 2) hierarchically organized graphical images, and 3) vector based graphical images, to be retrieved. It contends that ADT's proposed construction is a rewrite of the claims.

ADT argues that its proposed construction "teases out each of the things that has to happen like a punch list which is how a claim should be applied once properly construed." Doc. 138, Transcript at 40. The parties do not dispute that all of these types of image elements are required, and ADT states that its proposal does not require any sequence.

The Court agrees with the plaintiff that no construction is necessary. Column 5 of the '817 patent, Lines 39, through 45 provides support for the plaintiff's position, stating "A hierarchically organized graphical image may include any group of graphical images arranged relative to one another and/or accessible through one another." *Id.* The patent goes on to provide a specific example: "In some embodiments a hierarchically organized graphical image may include camera feed from a room of a device, accessible from a floor plan, accessible from a site plan, accessible from a map." *Id.* This language suggests that the task could be performed in one step. Nothing in the intrinsic record justifies interpreting this language to require three separate image retrieval steps. The Court finds no construction is necessary and the claim terms should be given their ordinary and customary meaning.

D.  "wherein the retrieving enhanced information including written information based on the device identifier and the device condition comprises: retrieving enhanced information including date/time information, account information, premises information, device information, condition information, support information, contact information, linked information, and instructional information based on the device identifier and the device condition" + "dispatching the enhanced information to the one or more communication destinations using the one or more communication methods"

Applied argues no construction is necessary.  ADT, on the other hand, proposes the following:

retrieving written date/time information based on the device identifier and the device condition; retrieving written account information based on the device identifier and the device condition; retrieving written premises information based on the device identifier and the device condition; retrieving written device information based on the device identifier and the device condition; retrieving written condition information based on the device identifier and the device condition; retrieving written support information based on the device identifier and the device condition; retrieving written contact information based on the device identifier and the device condition; retrieving written linked information based on the device identifier and the device condition; retrieving written instructional information based on the device identifier and the device condition; and then dispatching all the above written information to the determined communication destination using the determined communication method.

This language appears in dependent claim 9 of the 817 patent.  ADT contends its proposed construction makes it clear that all of the information must be retrieved and transmitted.  It relies on the examiner's striking "and/or," and substituting "and" before "instructional information" in the last line of the "receiving clause.  It also relies on the language of the claim itself, and the prosecution history in support of its interpretation.

Applied argues that ADT has forced together claim elements from two separate claims (independent claim 1 and a dependent claim 9) as a single phrase for construction.  Further, it argues the the examiner globally struck "and/or" throughout the patent for clarity.

13

The Court finds that ADT places too much reliance on the argument that the patent examiner's replacing "and/or" with "and" substantively changed the meaning of these clauses.  It is clear in Claim 1 that "all of" the three listed types of information but be retrieved.  The absence of that limiting language indicates that the claim should not be read as requiring the retrieval of all of the information recited.  Also, claim 9 depends from claim 8, which is not limited to any type of enhanced written information.  Claim 9 also uses the open-ended term of art "comprises" as an antecedent to the list of ten types of information.  In the contest of the patent as a whole, ADT's proposed construction does not make sense.  The court finds no construction is necessary.

> E.  "receiving one or more signals containing a device identifier for a smoke detector, a pull station, a security detector, a carbon monoxide detector, and a check-in monitor from one or more remote alarm monitoring systems"

This language is found in claim 2 of both patents.  Applied again states no construction is necessary.  ADT proposes the phrase be construed to mean:

> receiving a signal containing a device identifier for a smoke detector from a remote alarm monitoring system; receiving a signal containing a device identifier for a pull station from a remote alarm monitoring system; receiving a signal containing a device identifier for a security detector from a remote alarm monitoring system; receiving a signal containing a device identifier for a carbon monoxide detector from a remote alarm monitoring system; and receiving a signal containing a device identifier for a check-in monitor from a remote alarm monitoring system.

In response, Applied again argues that ADT's proposal would mean that the claim requires separately receiving each of the five signals.  Again, Applied contrasts the language to that of Claim 1, wherein the claim recites "all of."  Here, the claim clearly states "one or more."

The Court agrees that no construction is necessary and the plain and ordinary meaning should be applied.  Nothing in the intrinsic record supports requiring the receipt

of five separate devices' specific signals. The claim language as written does not require that either.

F. "determining one or more communication methods of email, text message, instant message, website link, phone, and mail based on the device identifier and the device condition"

This language is found in claim 11 of both patents. Applied again proposes that no construction necessary. ADT again seeks to require a determining step for all six communication methods.

The Court finds that the inclusion of the clause "one or more" is determinative of the issue. The Court finds no construction is necessary.

G. "determining one or more device communication destinations of a personal computer, a phone, a mobile device, a display, and a custom device based on the device identifier and the device condition"

This language is found in claim 12 of the patents. Applied proposes no construction. ADT again proposes multiple steps. For the reasons stated above, the court finds no construction is necessary. The "one of more" limitation is dispositive.

H. "determining one or more entity communication destinations of an authority, a first responder, a service company, an owner, a manager, a staff, an occupant, a supplier, a customer, a neighbor, and a custom entity based on the device identifier and the device condition"

This is found in claim 13 of the patents. Applied again proposes no construction and ADT again wants a determining step for each listed entity communication destination. Again the "one or more" phrase is determinative. The Court finds no construction is necessary.

The Court generally finds that ADT's proposed constructions seek to rewrite the claims and improperly import various limitations that add unnecessary ambiguity, which will undoubtedly result in jury confusion. Because Applied Capital's proposed

constructions respect the express claim language and the teachings of the specifications, the Court finds no claim constructions are necessary except for those noted above.  Accordingly,

IT IS ORDERED:

1.      The defendants' emergency motion to preclude expert testimony and to strike untimely claim construction positions (Doc. 137) is denied as moot.

2.      The claims of the patents at issue shall be construed as set forth above.

DATED this 12th day of August 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge