IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| APPLIED CAPITAL, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>THE ADT CORPORATION and ADT LLC,<br><br>    Defendants. | No. 1:16-cv-815-JFB-SCY |

### APPLIED CAPITAL, INC.'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1. Applied Capital, Inc. ("Plaintiff") files this Second Amended Complaint for Patent Infringement against The ADT Corporation and ADT LLC (collectively "ADT"), and makes the allegations and contentions set forth in ¶¶ 2 *et seq*. herein. It is the intent of this pleading to (a) align the live factual allegations with the more detailed factual allegations set forth in Plaintiff's response (Dkt. 132) to, and the Court's memorandum order (Dkt. 145) denying, ADT's motion (Dkt. 123) for summary judgment of patent invalidity under 35 U.S.C. § 101; (b) reflect the parties' pre-*Markman* understanding that Plaintiff is not accusing "ADT Go" of infringement; (c) narrow and set forth the specific patent claims to be asserted at trial against ADT, consistent with Plaintiff's Preliminary Infringement Contentions, its opening expert report on infringement, and in view of the Court's claim construction order (Dkt. 146); (d) set forth more detailed factual allegations concerning Plaintiff's exclusive ownership of the asserted patents resulting from its purchase of such assets through a foreclosure sale in or around July 2014; and (e) reflect that Plaintiff will seek damages of no less than $41,595,397 at trial.

## THE PARTIES

2. Plaintiff is a New Mexico corporation with its principal place of business at 1508 Plaza Encantada NW, Albuquerque, New Mexico 87107. Since on or about July 29, 2014, Plaintiff has been the assignee and exclusive owner of patents covering inventions by Rodney Fox, including U.S. Patent Nos. 8,378,817 ("the '817 patent") and 9,728,082 ("the '082 patent"), each of which is titled "Premises Monitoring System." The '817 and '082 patents are attached hereto as Exhibit B and Exhibit C, respectively.

3. The ADT Corporation (now The ADT Security Corporation) and ADT LLC provide customers with an interactive security and home automation service called ADT Pulse®, which, upon the addition of the Home View feature, Plaintiff contends embodies and practices certain claims of the asserted patents. Though formed under Delaware law, ADT maintains a physical place of business at 3810 Rutledge Rd NE, Suite A, Albuquerque, New Mexico 87109 and is registered to conduct business in the state. ADT also maintains and operates servers in the United States that maintain and execute computer code capable of and programmed to notify customers of real-time conditions in their homes using the Home View feature.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

5. This Court has personal jurisdiction over ADT because (a) ADT admits it is subject to this Court's personal jurisdiction at least for purposes of this action (Dkt. 81 ¶¶ 5-6); (b) ADT waived its right to challenge personal jurisdiction by failing to raise a lack of personal jurisdiction defense in either of its answers; and because, directly or through intermediaries, (c) ADT has

committed acts within the District giving rise to this action and/or has established minimum contacts with the District such that the exercise of jurisdiction comports with due process.

6. This Court has venue over ADT because ADT maintains a physical location in this District, admits that venue is proper (Dkt. 81 ¶ 8), and further, has waived any objection it had to venue through its litigation conduct. Over the course of almost two years of litigation, ADT has participated in in-person discovery and claim construction hearings with the Court; filed a motion for summary judgment and obtained a ruling thereon; participated in telephonic hearings with the Court; served invalidity contentions; conducted claim construction discovery; filed claim construction briefs; entered agreed scheduling and protective orders with Plaintiff; conducted merits discovery concerning alleged infringement of the asserted patents; and moved the Court on several occasions to allow their out-of-state counsel to appear *pro hac vice*. ADT thereby has waived any objection it had to venue. *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 882 (Fed. Cir. 1997) ("A defendant may waive such affirmative defenses by actively litigating the suit, even where the defenses are properly included in the defendant's answer."); *Koninklijke Philips N.V. v. ASUSTek Comput. Inc.*, No. 1:15-cv-1125-GMS, 2017 WL 3055517, at *3 (D. Del. July 19, 2017) (finding that defendants' conduct waived any venue defense where they "(1) participated in a scheduling conference; (2) conducted discovery; (3) entered into a stipulation and protective order with the plaintiff; and (4) moved the court to allow their out of state counsel to appear *pro hac vice*").

### STANDING

7. Plaintiff is and has been the exclusive owner of all right, title, and interest in the asserted patents since on or about July 29, 2014 when Plaintiff acquired through a foreclosure sale

U.S. Patent Application No. 12/695,373 ("the '373 Application"), which issued as the '817 patent, and its continuation, U.S. Patent Application No. 13/767,580 ("the '580 Application"), which issued as the '082 patent. On or about February 1, 2011, in order to secure financing for his business endeavors, Mr. Fox granted Plaintiff a security interest in all of his then-owned and later acquired property. In or around June 2014, after Mr. Fox's business defaulted on debt payment obligations, Plaintiff foreclosed on the collateral and proceeded with a public foreclosure sale as provided under Article 9 of the Uniform Commercial Code. On or about July 29, 2014, Plaintiff purchased the collateral as the only bid received during the public sale. As a result of the foreclosure sale, Plaintiff acquired by operation of law all right, title, and interest in the '373 Application (which had already issued as the '817 patent) and the '580 Application (which issued later as the '082 patent). Plaintiff has owned the '817 and '082 patents continuously throughout the course of this lawsuit.

### THE '817 AND '082 PATENTS

8.  The '817 patent and the '082 patent, titled "Premises Monitoring System," share a disclosure (hereafter "Common Specification"), which fully incorporates and claims priority to two provisional applications (Nos. 61/147,948 and 61/228,044) filed with the USPTO on January 28 and July 23, 2009, respectively. The '817 patent issued on February 19, 2013 and the '082 patent issued August 8, 2017. The '817 patent has one independent method claim (claim 1) and the '082 patent has two independent system claims (claims 1, 17).

9.  The patents are directed to improving notification capabilities of conventional security systems by providing users of such systems with dynamic, interactive, event-based, electronic visual layout of their building, home, or premises. The technological requirements of

the visual layout are made explicit in the independent claims, all of which require retrieving visual layout data containing the following three elements based on an event: (1) "superimposed visual indicators" (i.e., iconic representations of devices in their current state on a map or floor plan); (2) "vector-based graphical images" (i.e., data for rendering images using one or more vectors); and (3) "hierarchically organized graphical images" (i.e., image elements arranged so they are accessible through one another). Each independent claim also requires determining a communication channel based on the event and sending the visual layout data using that communication channel. Among other things, the dependent claims add limitations concerning the types of events, the types of additional information included in the site information, sending site information without operator intervention, among other things.

10. With minor wording variations, independent claim 1 of the '817 patent and independent claims 1 and 17 of the '082 patent each recite: "receiving one or more signals containing a device identifier and a device condition from one or more remote alarm monitoring systems, retrieving enhanced information based on the device identifier and the device condition, determining one or more communication methods and communication destinations based on the device identifier and the device condition, and dispatching the enhanced information to the one or more communication destinations using the one or more communication methods, wherein the enhanced information based on the device identifier and the device condition comprises images based on the device identifier and the device condition, the images comprising all of the members selected from the group consisting of superimposed visual indicators, hierarchically organized graphical images, and vector-based graphical images." Claim 2 of each patent adds the following limitation: "receiving one or more signals containing a device identifier for a smoke detector, a

pull station, a security detector, a carbon monoxide detector, and a check-in monitor from one or more remote alarm monitoring systems." Claim 3 of each patent adds the following limitation: "receiving one or more signals containing a device condition of normal, fault, and supervisory from one or more remote alarm monitoring systems." Claim 6 of each patent adds the following limitation: "retrieving enhanced information including one or more communication links based on the device identifier and the device condition." Claim 7 of each patent adds the following limitation: "retrieving enhanced information including one or more communication links organized on one or more graphical images based on the device identifier and the device condition." Claim 8 of each patent adds the following limitation: "retrieving enhanced information including written information based on the device identifier and the device condition." Claim 9 of each patent adds the following limitation: "retrieving enhanced information including date/time information, account information, premises information, device information, condition information, support information, contact information, linked information, and instructional information based on the device identifier and the device condition." Claim 12 of each patent adds the following limitation: "determining one or more device communication destinations of a personal computer, a phone, a mobile device, a display, and a custom device based on the device identifier and the device condition." Claim 14 of each patent adds the following limitation: "dispatching the enhanced information automatically without requiring operator intervention to the one or more communication destinations using the one or more communication methods."

11.     Each and every claim of the '817 and '082 patents is valid and enforceable and enjoys a statutory presumption of validity separate, apart, and in addition to the statutory presumption of validity enjoyed by every other of its claims. '817 patent claims 1, 2, 3, 6, 7, 8, 9,

12 and 14 and '082 patent claims 1, 2, 3, 6, 7, 8, 9, 12, 14, and 17 are valid and enforceable, and each enjoys a statutory presumption of validity separate, apart, and in addition to the statutory presumption of validity enjoyed by every other of its claims. 35 U.S.C. § 282. As set forth in its December 11, 2012 Notice of Allowance concerning the '817 patent, the USPTO found that "[n]one of the prior art of record, either taken by itself or in any combination, would have anticipated or made obvious the invention of the present application at or before the time it was filed." In early 2018, the PTAB declined to institute ADT's *inter partes* review petition seeking to challenge the validity of the '817 patent claims under 35 U.S.C. § 103. The PTAB also rejected ADT's request for rehearing on the issue. And on August 7, 2019, this Court denied (Dkt. 145) ADT's motion for summary judgment of patent invalidity under 35 U.S.C. § 101 (Dkt. 123).

## THE ACCUSED ADT PULSE® SERVICE

12. ADT Pulse® is an interactive security and home automation service that allows customers to view and remotely control electronic devices in their home via an ordinary user interface implemented using lists, tiles, and dropdowns, or, alternatively, via the Home View feature: an electronic floor plan for a view of your home and controlling your home. The Home View feature was first offered by ADT in or around June 2012.

13. An installation of the ADT Pulse® service makes use of the following core components: (a) a security panel and/or gateway; (b) one or more customer premises devices such as life safety related sensors (e.g., motion, contact, fire, smoke, glass break sensors), image capture devices (e.g., digital or video cameras), and life style related devices configured to adjust at least one premises setting such as lighting, temperature, or door lock, among other things; (c) one or more user interface devices (e.g., computer, mobile phone, tablet) allowing a user to interface with

the gateway; (d) one or more clients such as the Pulse® web portal and mobile applications; (e) a database; and (f) backend server components communicating with the database, client applications, and the gateway or security panel.

14. Since the introduction of the Home View feature, iControl's Connect platform and other software developed by iControl Networks, Inc. has been used to implement the database, backend, and client application components of ADT Pulse® (including the Home View feature), except that (a) in or around 2013 to 2016, software developed by Essentel Inc. and/or ADT itself was used to implement certain middleware server and mobile application features,[1] and (b) since in or around 2017, software developed by ADT has been used to implement certain mobile application features. Connect provides a custom, on-premise interactive security and home automation platform for ADT Pulse®.

15. Although ADT is charged a monthly per subscriber fee for use of the Connect platform, the software used to implement ADT Pulse® is and has been deployed and operated by ADT in its own network operations center(s). This deployment scheme requires ADT to purchase its own server capacity, network operations bandwidth and cellular services, and to directly manage elements of support and other business management services.

16. On or about May 31, 2012, ADT issued a news release announcing the Home View feature and described how it works: "Once a customer sets up Home View via their personal ADT Pulse sign-in page, they can view color-coded icons of their security devices, lights, thermostats and cameras. By clicking on the icons, customers can easily control their home's lighting, climate and many small appliances. And if they have cameras, customers can quickly view real-time video

---

[1] *See* https://www.linkedin.com/in/frank-chu-ba45ab/ (last visited November 7, 2019).

by simply clicking the video icons." In or around the same time, ADT published a Home View video demonstration at the following link: www.ADTPulse.com/Home-View.

17. In or around June 2012, ADT made the following statements concerning the Home View feature through its then-group director of product management Steve Shapiro: (a) "[a]s far as I know, we're the first security company offering home automation and control to offer the Home View feature: an electronic floor plan for a view of your home and controlling your home"; (b) "we put our heads together with customer feedback and said, 'Why not just have a visual view of your whole home as you connect to ADT Pulse?' You log in and if you want [you] have one view of your house and you can see everything"; (c) "you look at the floor plan of your house [using your computer or Web-enabled mobile device], and, for example, if your door is open, the little indicator is different than if the door is closed. If the light is on, it sort of lights up, and the thermostat shows the temperature. So you no longer have to scroll through lists—it's a snapshot"; and (d) "[t]his is one of those things where you don't have to spend time training a customer. It's very self-evident as soon as they see a demonstration. They go, 'Oh, I could see my own house being this way. How simple it is to use.'"

18. In other words, once a Pulse® customer sets up Home View, they can quickly view and remotely monitor and interact with their ADT Pulse® devices via iPhones, iPads, etc. They can view color-coded icons of their security devices, lights, thermostats and cameras. The appearance of these icons is updated in real-time in the Home View interface when the state of the devices they represent change. Further, by clicking on the icons, customers can easily control their home's lighting, climate and many small appliances. And if they have cameras, customers can quickly view real time video by simply clicking the video icons.

## COUNT I (INFRINGEMENT OF U.S. PATENT NO. 8,378,817)

19. Plaintiff repeats and re-alleges each and every allegation of the prior paragraphs as though set forth fully herein.

20. As set forth in row (1) of Exhibit A attached hereto, the ADT Pulse® service practices claims 1, 2, 3, 6, 7, 8, 9, 12, and 14 of the '817 patent. The ADT Pulse® service practices claim 1 of the '817 patent because it does [a] receive events (identifying devices and their changed states) from a gateway of a customer site (remote alarm monitoring system); [b] determine at least one user interface device (communication destination) and active session and/or similar or related technology (communication method) to be notified of the event; [c] retrieve the claimed set of information including visual layout data for the Home View feature (images) based on the event, where the visual layout data defines images [i] depicting devices in their changed states on a floorplan of the premises (superimposed visual indicators) using one or more vectors (vector-based graphical images) and [ii] organized to link to additional graphics from, or for controlling or visualizing, such devices in their changed states (hierarchically organized graphical images); and [d] dispatch the claimed set of information to the user interface device using the active session and/or similar or related technology. ADT Pulse® practices claim 2 of the '817 patent because it can and does receive, via a gateway, signals containing a device identifier for a smoke detector or carbon monoxide detector. ADT Pulse® practices claim 3 of the '817 patent because it can and does receive, via a gateway, signals containing a Boolean device condition of normal (e.g., 0) and fault (e.g., 1). ADT Pulse® practices claims 6 and 7 of the '817 patent because it can and does retrieve the claimed set of information including communication link organized around visual indicators, such that clicking a visual indicator leads to establishing of a communication link with

the device the visual indicator represents. The ADT Pulse® service practices claim 8 and 9 of the '817 patent because it does retrieve the claimed set of information including displayable raw text based on the event (e.g., "Door Open," "Door Closed," or "58°"). The ADT Pulse® service practices claim 12 of the '817 patent because the user interface device can be a personal computer, a smartphone, or a tablet. The ADT Pulse® service practices claim 14 of the '817 patent because it does dispatch the claimed set of information automatically without requiring operator intervention after an active user session is established.

21. Plaintiff adopts, and incorporates by reference, as if fully stated herein, the claim chart attached hereto as Exhibit A. The claim chart describes and demonstrates how the ADT Pulse® service practices claims 1, 2, 3, 6, 7, 8, 9, 12, and 14 of the '817 patent.

22. ADT has directly infringed and continues to directly infringe claims 1, 2, 3, 6, 7, 8, 9, 12, and 14 of the '817 patent by deploying the ADT Pulse® service on servers in its network operations centers in the United States and then operating the system, thereby performing the claimed steps, to allow consumers to view, receive notification about, and remotely control devices in their home via the electronic Home View map.

23. ADT's infringement of the '817 patent has and continues to be willful. ADT has known of the '817 patent since on or about April 15, 2015 when James M. Scott, President of Applied Capital, Inc., discussed the patent with Raymond North who at the time was ADT's director of platform services, and provided Mr. North with a two-page summary of the invention. The two-page summary indicated "[t]he patent is available for sale or license" and explicitly identified the invention's unique features including use of "hierarchically organized, vector-based graphics (e.g., floor plans and other graphics showing device locations and status)" . . . allow[ing]

the user to click on the devices graphically depicted and other graphical elements to control the devices and access additional information and equipment."

24.  Over the next month, Mr. Scott corresponded with Mr. North concerning ADT's potential interest in the patent, and about the same time, ADT (a) was, on information and belief, in the midst of a dispute with iControl over use of the Home View feature; (b) was, on information and belief, in the process of attempting to develop its own hierarchically-organized, vector-based graphical Home View-like feature (potentially with assistance from Essentel Inc.); and (c) was, in fact, actively seeking patent protection for a "security system using a visual floor plan" rendered from visual layout data containing, e.g., "type of premises devices, location, e.g., global position system coordinates, XYZ coordinates, etc." Nonetheless, on May 22, 2015, ADT declined to buy or license the patent, stating "We had this reviewed internally and given the other IP in this area, we are going to decline either licensing or acquiring this patent at this time."

25.  Thus, on information and belief, ADT was well-aware of the applicability of the '817 patent and its claims to the ADT Pulse® service but decided to infringe anyway. On information and belief, ADT either compared the '817 patent claims to the ADT Pulse® service and determined infringement was likely, or deliberately chose not to compare the '817 patent claims to the ADT Pulse® service out of fear that infringement was likely. Either way, without authorization, ADT simply continued to infringe the '817 patent as set forth in ¶¶ 19-22 herein.

26.  ADT's actions during the course of this lawsuit further show ADT's intent to willfully infringe the '817 patent. For example, almost three years into this lawsuit, in April 2019, ADT filed a borderline frivolous motion for summary judgment challenging the patent eligibility of the '817 patent invention under 35 U.S.C. § 101, despite arguing to the USPTO in December

2016 that its own purported invention of a security system using a visual floor plan was patent eligible. Further, ADT made plans to delay resolution of this case for as many years as possible by surreptitiously interjecting itself into a state court contract dispute between Mr. Fox and Plaintiff. The correspondence shows that ADT intended to delay resolution of this case for another five years by silently bankrolling activities in the state court contract dispute to Plaintiff's detriment. Such egregious conduct evidences willfulness.

27.     As a result of ADT's willful, direct infringement of the '817 patent, Plaintiff has been damaged, and ADT's continued acts of willful, direct infringement have caused and will continue to cause damage to Plaintiff. Under 35 U.S.C. § 284, Plaintiff is therefore entitled to recover from ADT damages in an amount to be determined at trial and no less than $41,595,397.

## COUNT II (INFRINGEMENT OF U.S. PATENT NO. 9,728,082)

28.     Plaintiff repeats and re-alleges each and every allegation of the prior paragraphs as though set forth fully herein.

29.     As set forth in row (2) of Exhibit A attached hereto, the ADT Pulse® service practices claims 1, 2, 3, 6, 7, 8, 9, 12, 14, and 17 of the '082 patent. The ADT Pulse® service embodies claims 1 and 17 of the '817 patent because it is a system programmed to [a] receive events (identifying devices and their changed states) from a gateway of a customer site (remote alarm monitoring system); [b] determine at least one user interface device (communication destination) and active session and/or similar or related technology (communication method) to be notified of the event; [c] retrieve the claimed set of information including visual layout data for the Home View feature (images) based on the event, where the visual layout data defines images [i] depicting devices in their changed states on a floorplan of the premises (superimposed visual

indicators) using one or more vectors (vector-based graphical images) and [ii] organized to link to additional graphics from, or for controlling or visualizing, such devices in their changed states (hierarchically organized graphical images); and [d] dispatch the claimed set of information to the user interface device using the active session and/or similar or related technology. ADT Pulse® practices claim 2 of the '082 patent because it can and does receive, via a gateway, signals containing a device identifier for a smoke detector or carbon monoxide detector. ADT Pulse® practices claim 3 of the '082 patent because it can and does receive, via a gateway, signals containing a Boolean device conditions of normal (e.g., 0) and fault (e.g., 1). ADT Pulse® practices claims 6 and 7 of the '082 patent because it can and does retrieve the claimed set of information including communication link organized around visual indicators, such that clicking a visual indicator leads to establishing of a communication link with the device the visual indicator represents. The ADT Pulse® service practices claim 8 and 9 of the '082 patent because it is a system programmed to retrieve the claimed set of information including displayable raw text based on the event (e.g., "Door Open," "Door Closed," or "58°"). The ADT Pulse® service practices claim 12 of the '082 patent because the user interface device can be a personal computer, a smartphone, or a tablet. The ADT Pulse® service practices claim 14 of the '082 patent because it is a system programmed to dispatch the claimed set of information automatically without requiring operator intervention after an active user session is established.

30. Plaintiff adopts, and incorporates by reference, as if fully stated herein, the claim chart attached hereto as Exhibit A. The claim chart describes and demonstrates how the ADT Pulse® service practices claims 1, 2, 3, 6, 7, 8, 9, 12, 14, and 17 of the '082 patent.

31. ADT has directly infringed and continues to directly infringe claims 1, 2, 3, 6, 7, 8,

9, 12, 14, and 17 of the '082 patent by deploying the ADT Pulse® service on servers in its network operations centers in the United States and then operating the system, thereby deploying software programmed to perform the claimed functions, to allow consumers to view, receive notification about, and remotely control devices in their home via the electronic Home View map.

32. ADT's infringement of the '082 patent has and continues to be willful for the same reasons set forth in ¶¶ 23-26 herein, as the '082 patent is a continuation of the '817 patent. Plaintiff hereby incorporates the allegations of ¶¶ 23-26 as though fully set forth herein.

33. As a result of ADT's willful, direct infringement of the '082 patent, Plaintiff has been damaged, and ADT's acts of willful, direct infringement have caused and will continue to cause damage to Plaintiff. Pursuant to 35 U.S.C. § 284, Plaintiff is thus entitled to recover from ADT damages in an amount to be determined at trial and no less than $41,595,397.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for entry of judgment against ADT as follows:

A. Declaring that ADT has infringed the '817 and '082 patents;

B. Finding that ADT's infringement of the '817 and '082 patents was willful;

C. Awarding to Plaintiff damages arising out of ADT's infringement of the '817 and '082 patents, including enhanced damages pursuant to 35 U.S.C. § 284, together with prejudgment interest, in an amount according to proof, but in any event no less than $41,595,397;

D. Awarding attorneys' fees to Plaintiff pursuant to 35 U.S.C. § 285 and as otherwise permitted by law; and

E. Awarding such other costs and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable to a jury.

Respectfully Submitted,

*/s/ Chijioke E. Offor*
Luis M. Ortiz
lortiz@olpatentlaw.com
Richard Krukar
krukar@olpatentlaw.com
ORTIZ & LOPEZ, PLLC
6605 Uptown Blvd. NE, Suite 240
Albuquerque, NM 87110
Tel: (505) 314-1310

**Attorneys for Applied Capital, Inc.**

\* Admitted *pro hac vice*

SHORE CHAN DEPUMPO LLP
Michael W. Shore
mshore@shorechan.com
Alfonso G. Chan
achan@shorechan.com
Samuel E. Joyner*
sjoyner@shorechan.com
Chijioke E. Offor*
coffor@shorechan.com
William D. Ellerman*
wellerman@shorechan.com
Paul T. Beeler*
pbeeler@shorechan.com
Shukri Abdi*
sabdi@shorechan.com
SHORE CHAN DEPUMPO LLP
901 Main Street, Suite 3300
Dallas, TX 75202
Tel: (214) 593-9110
Fax: (214) 593-9111

**Attorneys for Applied Capital, Inc.**

**CERTIFICATE OF SERVICE**

I certify that, on January 27, 2020, this document was served upon all counsel of record listed below via electronic mail.

| | |
|---|---|
| Tiffany L. Roach Martin (tlr@modrall.com) | Michael E. Zeliger (michael.zeliger@pillsburylaw.com) |
| Jeremy K. Harrison (jkh@modrall.com) | Audrey Lo (audrey.lo@pillsburylaw.com) |
| Modrall, Sperling, Roehl, Harris & Sisk, P.A. | Ranjini Acharya (ranjini.acharya@pillsburylaw.com) |
| P.O. Box 2168 | Pillsbury Winthrop Shaw Pittman LLP |
| Albuquerque, NM 87103 | 2550 Hanover Street |
| | Palo Alto, CA 94304 |

Eric C. Rusnak (eric.rusnak@pillsburylaw.com)
Pillsbury Winthrop Shaw Pittman LLP
1200 17th Street, NW
Washington, DC 20036

/s/ *Chijioke E. Offor*